In The

# United States Court of Appeals for the Third Circuit

## 16-1101

TYMECO JONES, IESHA BULLOCK, and TEAIRRA PIZARRO, on behalf of themselves and those similarly situated,

*Plaintiffs-Appellees*

v.

SCO, SILVER CARE OPERATIONS, LLC, d/b/a ALARIS HEALTH AT CHERRY HILL

*Defendant-Appellant*

*On Appeal from the Order entered December 16, 2015 in the United States District Court for the District of New Jersey at No. 1-13-cv-07910*

# BRIEF AND APPENDIX
# VOLUME I OF II (pgs. 1a-29a)

STUART A. WEINBERGER, ESQ.
GOLDBERG AND WEINBERGER LLP
630 THIRD AVENUE 18TH FLOOR
(212) 867-9595
*Attorney for SCO Silver Care Operations LLC,*
*d/b/a Alaris Health at Cherry Hill*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ......................................................... ii

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION............................................................................ 2

STATEMENT OF THE ISSUES................................................... 4

STATEMENT OF RELATED CASES AND PROCEEDINGS.................... 6

STATEMENT OF STANDARD OF REVIEW ............................ 6

STATEMENT OF CASE............................................................... 7

SUMMARY OF ARGUMENT ................................................... 22

ARGUMENT ............................................................................... 26

    I. THE COURT HAS JURISDICTION OVER THIS CASE ........... 26

    II. APPELLEES MUST BE REQUIRED TO ARBITRATE THEIR
    CLAIMS REGARDING THE DIFFERENTIALS AND THE MEAL
    BREAKS.................................................................................. 36

CONCLUSION ........................................................................... 53

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page**

*Arthur Anderson LLP v. Carlisle,* 556 U.S. 624 (2009) ........................... 27,28

*Babcock v. Butler County,* 806 F.3d 153 (3d. 2015) ............................. Passim

*Bell v. Southeastern Pennsylvania Transp. Authority,* 777 F.3d 490 (3d Cir. 2013) ................................................................................................ 37,45

*Bonnell/Tredegar Indus., Inc. v. NLRB,* 46 F.3d 339, 344 (4th Cir.1995) .... 39

*Circuit City v. Adams,* 532 U.S. 105 (2001) ................................................. 30

*Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n,* 491 U.S. 299 (1989) ................................................................................................ 38,39,44

*Devon Robotics, LLC v. DeViedma,* 798 F.3d 136, 146-147(3d. Cir. 2015)Passim

*Edwards v. Hovensa, LLC, 487 F.3d 355 (3d Cir. 2007)* ............................. 29

*First Jersey Nat'l Bank v. Dome Petroleum Ltd.,* 723 F.2d 335, 337 (3d Cir. 1983) ............................................................................................ 35

*International Brotherhood of Teamsters Local Union v. Kienstra Precast, LLC,* 702 F.3d 954 (7d Cir. 2012) ............................................................. 30

*Palco v. Airborne Express, Inc.,* 372 F.3d 58, 5988 (3d. Cir. 2004) ............ 30

*Quilloin v. Tenet Healthsystem Philadelphia,* 673 f.3d. 221 (3d Cir. 2012) 39

*Richerson v. Jones,* 572 F.2d 89, 93 (3d. Cir. 1978) ................................... 35

*Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America,* 207 F.2d 45 (1953) ................................................................. 29,30

*Transportation-Communication Employees Union v. Union Pc. R.R. Co.,*
  385 U.S. 157, 160-161, 87 S.Ct. 369, 371, 17 L.Ed 2d 264 (1967) .... 23, 37, 44

*Turner v. City of Philadelphia,* 262 F.3d 222, 226 (3d Cir. 2001) .............. 38

*United Steelworkers of America v. American Manufacturing Co.,* 363 U.S.
  564 (1960) ................................................................................................ 39

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S.
  593, 599 (1960) ............................................................... 39, 43, 46, 49

*United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 564,
  578-579 (1960) ............................................................... 37, 39, 43

*Vadino v. A. Valey Engineers,* 903 F.2d 253 (3d Cir. 1990) ................ Passim

*Zavala,* 691 F.3d 527, 536 n. 4 (2012) ........................................................ 51

## Statutes:

29 U.S.C. § 207 ....................................................................................... 7
29 U.S.C. § 216(b) .................................................................................. 7
29 U.S.C. §158(d) .................................................................................. 39
9 U.S.C. § 16(a)(1)(b) .................................................... 3, 27, 28, 29
9 U.S.C. § 1 ............................................................................................ 29
9 U.S.C. § 16 ................................................................................. Passim
9 U.S.C. § 16(a)(1)(a) ........................................................... 3, 27, 28
9 U.S.C. § 16(a)(1)(c) ................................................................. 27, 28
9 U.S.C. § 16(a)(3) ........................................................... 3, 27, 29
9 U.S.C. § 206 ................................................................................ Passim
9 U.S.C. § 3 ..................................................................................... Passim
9 U.S.C. § 4 ..................................................................................... Passim
Federal Arbitration Act, at 9 U.S.C. 3 .............................................. 4

National Labor Relations Act, 29 U.S.C. § 158(d) ........................... 39

## Rules

Fed. R. Civ. P. 60 (b) ....................................................................... 35

Fed. R. Civ. R. 59 (e) ....................................................................... 35

FRAP 4(a) ........................................................................................ 36

FRAP 4(a)(4)(A) .........................................................................35, 36

FRCP 12(h)(3) ................................................................................. 34

Local Civil Rule 7.1(i) ..................................................................... 35

N.J.S.A. 34:11-56a *et seq.* ................................................................. 7

Rule 59(e) ........................................................................................ 36

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Defendant- Appellant SCO Silver

Care Operations, LLC ("Silver Care") makes the following disclosure: It has no

parent corporations nor holds 10% or more stock in a publicly held corporation.

1

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Plaintiff-Appellees ("Appellees"), who are certified nurses aides working at Silver Care, instituted this collective action alleging that they are owed overtime under Federal and New Jersey law as well straight time under New Jersey law. Appellees allege that differentials were not included in their regular rate of pay for purposes of computing overtime and that they were not paid for the time that they worked through their meal breaks. Appellees moved for conditional certification of the collective action. (41a)[1]

Silver Care cross-moved to compel arbitration on the issues involved with Appellees' claims. Silver Care asserted that the alleged failure to pay overtime for the time worked during meal breaks involved issues concerning the interpretation of the collective bargaining agreement, including the practices that were established regarding the meal breaks under the CBA.  Silver Care also asserted that the claim involving the differentials also required an interpretation of the CBA because Silver Care asserted that an overtime payment was included as a component of the differentials. (447a)

This case is before this Court on Silver Care's appeal of the District Court's denial of its application to compel arbitration of the issues involved in this case

---

[1] A number followed by "a" refers to the page in the Appendix.

pursuant to a collective bargaining agreement and to stay this action pending the arbitration of these issues. (2a, 16a, 18a and 28a) The District Court conditionally certified these claims involving the differentials and the meal breaks as a collective action. (2a and 16a)

The appeal is from the Order of the District Court denying Silver Care's application to compel arbitration and the District Court's denial of Silver Care's motion for reconsideration. (1a) This Court has jurisdiction for review under the following: (1) 9 U.S.C. § 16(a)(1)(a) because the district court denied Silver Care's motion to stay this action in favor of arbitration under 9 U.S.C. § 3; (2) 9 U.S.C. § 16(a)(1)(b) because the district court denied Silver Care's motion to compel arbitration under 9 U.S.C. § 4; (3) 9 U.S.C. § 16(a)(1)(c) because the District Court denied Silver Care's motion to compel arbitration under 9 U.S.C. § 206, and (4) 9 U.S.C. § 16(a)(3) because an order can be appealed if it is a final determination regarding an arbitration.

## STATEMENT OF THE ISSUES

1. Must the Plaintiffs be compelled to arbitrate their dispute with Silver Care regarding whether Silver Care failed to pay time and a half on differentials when employees worked overtime (that is, whether the differentials include an overtime component) either instead of this collective action and/or before this collective action can proceed because these disputes over what the practices were regarding the payment of the differentials involve an interpretation and application of the collective bargaining agreement between Silver Care and District 1199C, National Union of Hospital and Health Care Employees, AFSCME, AFL-CIO ("District 1199C" or "Union")? Silver Care asserts that the payment of the differential included as a component a payment for overtime. (306-307a) Silver Care further asserts that it is for the arbitrator under the collective bargaining agreement to interpret and apply the collective bargaining agreement (including the practices regarding the payment of this differential) to resolve the dispute over whether the differentials included a component for overtime. (273a and 277a) Silver Care believes that this resolution must be made by an arbitrator in accordance with years of both U.S. Supreme Court and Third Circuit law before this the FLSA claim can proceed.

2. Must the Plaintiffs be compelled to arbitrate their dispute regarding

the practices involving meal breaks either instead of this collective action and/or before this collective action can proceed because these issues involve an interpretation and application of the collective bargaining agreement between Silver Care and District 1199C? Silver Care asserts that there is a dispute between the parties regarding whether the thirty-minute unpaid meal break period was combined with one or two paid fifteen minute breaks to provide for a combined meal break of forty-five or sixty-minutes. There also is an issue of how the employees are paid if there is an interruption during the combined meal break, that is, whether the interruption is considered part of the paid time (fifteen or thirty minutes of the paid time during the break) or the unpaid time (the other thirty minutes which constituted the meal break). (273a and 276a) Silver Care further asserts that it is for the arbitrator under the collective bargaining agreement to interpret and apply the collective bargaining agreement to determine other practices regarding the meal breaks in order to ascertain which party, Silver Care or the employee, received the pre-dominant benefit of the meal break. These determinations also are particularly relevant in light of this Court's recent decision in *Babcock v. Butler County*, 806 F.3d 153 (3d. 2015) in which Court held that the determination of whether employees are owed overtime is based upon whether the employer or the employees received the benefit from the meal break. 806 F.3d at 157. In accordance with years of both Supreme Court and

Third Circuit law, Silver Care asserts that the resolution of these issues must be through arbitration under the collective bargaining agreement.


## STATEMENT OF RELATED CASES AND PROCEEDINGS

There are no related cases or proceedings.


## STATEMENT OF THE STANDARD OF REVIEW

The Court reviews the District Court findings of facts based upon clear error but exercises plenary review over questions of law.

## STATEMENT OF CASE

Plaintiffs-Appellees Tymeco Jones, Teairra Pizarro, and Iesha Bullock filed this action against Silver Care on December 31, 2013. (30a) The complaint was then amended on March 3, 2014. (30a) Appellees alleged overtime claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 (117-118a). Appellees sought to maintain the action as a collective action on behalf of hourly employees that worked for Silver Care at any time in the past three years. (49a) Appellees also raised claims under New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.* (NJWHL), on behalf of themselves only, for unpaid wages. (119-120a)

Appellees alleged that Silver Care automatically deducted a half an hour for a meal break even though Appellees allegedly worked through their meal breaks. (113-115a) They claim that, by working through their breaks, they are owed overtime under the FLSA and unpaid wages for straight working time under NJWHL. Appellees further claim that Silver Care did not include in its overtime calculations differentials received by CNAs that they claim should have been included in their regular rate of pay prior to calculating their overtime rate of pay. (106-109a)

On December 2, 2014, Appellees moved to have this action conditionally certified as a collective action under 29 U.S.C. § 216(b). (41a) The collective action class sought for the meal break claim was all CNAs that worked the night shift. (48a)

7

As for claims involving the differentials, Appellees moved for conditional certification for a class of all CNAs. (47-48a)

Silver Care opposed this motion. Silver Care also filed a cross-motion under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3, 4, and 206, to compel arbitration under a collective bargaining agreement and to stay the action pending arbitration or, in the alternative, to dismiss the action for lack of subject matter jurisdiction pursuant to FRCP 12(h)(3). (447a) Silver Care asserted that Appellees were required to arbitrate under the collective bargaining agreement because an interpretation of the application of the practices under the collective bargaining agreement was necessary to determine how the differentials were paid, including whether the differentials had as a component a payment for overtime.(273-278a and 490-494a) Silver Care further asserted that the determination of whether monies would be owed for working during the meal breaks also required an interpretation of the collective bargaining agreement because of the dispute over the length of the breaks (Appellees alleged that the breaks were thirty minutes and Silver Care claimed that the breaks were forty-five or sixty-minutes depending on the unit) as well as the practices resulting from combining paid breaks with unpaid time for the meal breaks. (273-278a and 490-494a)

On September 22, 2015, the District Court granted the Appellees' motion for conditional certification and denied Silver Care's motion to compel arbitration. (2a

and 16a) Silver Care moved for reconsideration. (531a) On December 16, 2015, the District Court denied Silver Care's motion for reconsideration. (18a and 28a) Silver Care filed a notice of appeal on January 14, 2016 of the District Court's Orders. (1a) The matter before this Court involves Silver Care's appeal of the District Court's Orders (16a and 28a) denying Silver Care's motion to compel arbitration and denying the stay of these proceedings pending the arbitration.

### Facts Regarding the Meal Break

Silver Care is a nursing facility. (304a, Mimna Decl. at ¶ 2) The facility was purchased by Silver Care in May, 2007. Its operation began at the facility in May, 2007. (304a) Prior to May, 2007, Silver Care had nothing to do with the facility.

Silver Care has different departments staffed by hourly employees, including dietary, housekeeping, and clerical employees. (304a) Each of these departments has separate supervisors. (304a) These employees have different job duties than CNAs. (304a) Many hourly employees are scheduled to work at most 37.5 hours per week. (304)

Silver Care has five different sections. (300a, Cassidy Decl. at ¶ 3) Court I is a long term care unit where residents reside. (300a) Court II is also a long term care unit where residents reside. (300a) The Atrium is a sub-acute rehabilitation unit, where residents are brought to rehabilitate. (300a) The Pavilion is where residents

with behavioral problems reside. (300a) The Vent unit is for residents on ventilators. (300a) Appellees Jones and Pizarro generally worked in Court II. (302a)

There are night supervisors who are responsible for overseeing the night shift (308a, Syarief Decl. at ¶ 1; 312a, Taylor Decl. at ¶ 2; 314a, Yang Decl. at ¶ 3), which is 11:00 P.M. to 7:00 A.M. (302a, Cassidy Decl. at ¶ 23). Sri Syarief has worked at Silver Care since 2007. (308a, Syarief Decl. at ¶ 1.) She worked as a night supervisor until August 2013. (308a) Since August 2013, Dennis Taylor was employed as a night supervisor. (314a) Kim Yang has also worked as a night shift supervisor. (314a) Besides night shift supervisors, there are charge nurses as well as nurses that work during the night shift to supervise the floors. Alamin Young has been a charge nurse generally on Court II since October 2011. (310a, Young Decl. at ¶ 3)

The CNAs employed at Silver Care are also covered by a collective bargaining agreement with the Union. (305a, Mimna Decl. at ¶ 10; 153a, 428a) The collective bargaining agreement ("CBA") in effect at the time that the motion to compel arbitration was made provides in Article X that:

> Employees who are scheduled eight (8) hours a day, shall receive a thirty (30) minute unpaid meal period and two (2) paid fifteen minute breaks each eight (8) hour days. Employees working more than four hours (4) hours, but less than eight (8) hours, shall receive one half hour unpaid meal period and breaks shall be at the discretion of the Employer. Such meal periods and breaks shall be free and uninterrupted, and employees shall not be on call. However, in emergencies, employees are expected to respond.

(171a.)

The CBA further provided, in Article XXVI, titled Grievance and Arbitration, paragraph 2(a), for a grievance procedure for employees who have a claim for unpaid wages, such as a claim for not being allowed an uninterrupted break or that Silver Care violated the CBA with respect to wages in any other way. (189a) The policy, as stated in the CBA, was that the employee should present their claim to the "department head or supervisor." (189a) Section 2(b) also provided for the Union to file a grievance as well. (190a) If the matter is not resolved, the matter is submitted to arbitration in accordance with paragraphs 2 and 4. (190a)

In support of their motion for conditional certification, Appellees submitted the affidavits of Appellees Jones and Bizzaro as well as purported opt-ins to the collective action Beverly Smith, Melissa Smith, and Chandra Murray. Bullock began as a CNA in 2006 and formally resigned in December 2014. (80a, Bullock Decl. at ¶ 1; 302a, Cassidy Decl. at ¶ 20) Pizarro was as a CNA from July 2009 until May 31, 2014. (83a, Pizarro Decl. at ¶ 2) Jones has been employed as a CNA since the Spring of 2004. (76a, Jones Decl. at ¶ 2) Jones has not worked on a night shift since the Summer of 2014. (77a)[2]

Jones and Pizarro made virtually the same allegations in their respective declarations, with the differences, in essence, being that Jones stopping working the

---

[2] Three current or former employees have purported to opt-in: Ms Beverly Smith who last worked at Silver in the spring of 2011. Ms. Melissa Smith who last worked in 2013. Ms. Chandra Murray who is a current employee.

night shift in the Summer of 2014 and Pizarro started working the night shift from July 2012 until the end of her employment in May 2014. (77-78a & 84-85a) Both state that Silver Care's policy is to require employees to take a 30-minute meal break. (77a & 84a) They allege that 30 minutes is automatically deducted from their pay for each shift due to the required meal break. (77a & 84a.) Jones and Pizarro allege that they rarely took uninterrupted meal breaks while working the night shift. (77-78a & 84-85a) They both claim that "Management, including Cassidy, "Supervisor Shrie" and Dennis" are/were aware that they and other CNAs did not take meal breaks. (78a & 85a)[3]

Appellees also submitted a declaration from purported opt-in plaintiff Beverly Smith.[4]  Smith last worked as a CNA at the facility in the Spring of 2011. (87a, Beverly Smith Decl. at ¶ 1) Smith's claims and statements are clearly beyond the statute of limitations to file a claim under the FLSA and New Jersey Law. 29 U.S.C. § 255(a) (FLSA has, at most, three-year limitations period if violation found to be willful). Smith declares that "Management, including . . . Dennis" knew of the practice of employees having interrupted breaks. (89a) Smith provides no

_____

[3] Plaintiff Bullock did not work the night shift. (113-114a) She does not claim that she did not have 30-minute uninterrupted lunch meal breaks. (118-119a)

[4] Plaintiffs call Ms. Smith an "opt-in Plaintiff" in their Memorandum of Law, but Beverly Smith has not filed a written consent to join this action as required by § 216 of the FLSA. (30a)

explanation of how she knew that Dennis was aware of this when Dennis was not

employed until over three years after Smith left employment. (312a, Taylor Decl. ¶

at 1)

Another declaration was submitted from purported opt-in plaintiff Melissa

Smith, who was also a CNA.[5] (91a, Melissa Smith Decl. at ¶ 2) Smith last worked

at the facility in January 2013. (91a) In her declaration, Smith alleges that she mostly

worked night shifts. She alleges her breaks were not scheduled "due to fewer

numbers of CNAs on duty." (92a) Smith further claims that CNAs at night could not

take a break in the break room because it was impossible to hear the bell in the break

room. (92a) The "rare times" that she attempted a meal break, she took it at the

nurses station while completing charts and so that she could hear the call bell. (92a)

She claims that she could not take uninterrupted breaks. Like her mother, Smith

claims that "Management, including . . . Dennis" knew of the practice of employees

having interrupted breaks. (92a) Smith also provides no explanation of how she

knew that Dennis was aware of this when Dennis was not employed until over two

years after Smith left employment. (312a, Taylor Decl. ¶ at 1)

---

[5] Melissa Smith has not filed a written consent to join this action as required by §
216 of the FLSA. (30a)

Appellees further submit the declaration of opt-in plaintiff Chandra Murray. Murray is employed as a CNA. (95a, Murray Decl. at ¶ 16)[6] Murray claims that night shift supervisors do not schedule her breaks and that she does not take uninterrupted meal breaks of 30 minutes because on those rare occasions that she attempted to take a meal break, the needs of the patients were unpredictable because of the limited staffing. (96a) She further claims that no one ever informed her of a procedure for reporting missed meal breaks. (97a)

None of the foregoing CNAs could identify one other CNA who allegedly worked through a meal break. None of the CNAs did or could state when they told "Management" that they worked through the breaks or how "Management" learned that employees were working through their breaks. None of the foregoing CNAs explained what they meant when they said that their break was interrupted; at best, they imply it was because they had to answer a call-bell *if* it rang. None of them indicated how often this occurred, how long it would take to respond, or any other information about the extent of their duties during the alleged interruption. None of the foregoing CNAs could identify any specific instance of what the practices were with respect to any other CNA regarding any purported interruption during a meal break.

---

[6] Chandra Murray has not filed a written consent to join this action as required by § 216 of the FLSA.

In response to the motion for conditional certification and in support of its motion to compel arbitration under the CBA, Silver Care disputed the practices alleged by Appellees, including the length of the meal breaks. Silver Care asserted that the meal breaks are not actually thirty- minutes. Silver Care stated that meal breaks are actually forty-five-minutes or sixty-minutes, depending upon the unit in which the CNAs worked. (301a, Cassidy Decl. at ¶¶ 14-15; 312a, Taylor Decl. at ¶¶ 4-5; 308a, Syarief Decl. at ¶¶ 5-6; 314a, Yang Decl. at ¶¶ 7-8, and 359a, Cassidy Decl. at Ex. B)

In all the units except the Pavilion, the night-shift CNAs are provided with a forty-five-minute break. (301a, Cassidy Decl. at ¶ 14; 312a, Taylor Decl. at ¶ 4; 308a, Syarief Decl. at ¶ 4; 314a, Yang Decl. at ¶ 8) The forty-five-minute break is created by having the 30-minute meal break combined with one of the two fifteen-minute paid breaks that the CNAs also receive. (301a, 308a, 312a, 314a) At the Pavilion, employees are assigned a one-hour break. (301a, 308a, 312a, 314a, 359a) The two fifteen-minute paid breaks are combined with the 30-minute unpaid meal break. (301a, 308a, 312a, 314a) The Appellees admitted that all CNAs are required by Silver Care to take their breaks. (301a, Cassidy Decl. at ¶ 13; 77a & 84a, Jones Decl. & Pizarro Decl. at ¶ 10) All the CNAs working the night shift take their break. (302a, Cassidy Decl. at ¶ 25; 307a, Mimna Decl. at ¶ 29; 313a, Taylor Decl. at ¶ 11; 309a, Syarief Decl. at ¶ 12; 315a, Yang Decl. at ¶ 12)

15

Silver Care asserted that it was for the arbitrator to determine under the collective bargaining agreement the practices regarding the meal breaks. (273-278a, 490-494a) The arbitrator had to determine the practices involving the length of the meal breaks, that is, whether the meal break was thirty-minutes as alleged by Appellees or forty-five-minutes or sixty-minutes as claimed by Silver Care. The arbitrator also had to determine the practices of whether time spent purportedly working during the break was for the part of the paid time off or the unpaid time off. For example, if a CNA worked for ten minutes out of the forty-five-minute break that the CNA received, would that the ten-minute interruption be part of the fifteen minutes for the paid time of the break or would that time be considered part of the thirty-minute unpaid time for the break?

*Facts Regarding the Pay Differential Claims*

Appellees and the purported employees who opt-in to the collective action claim allege that the pay differentials they allegedly received were not included in their regular rate of pay for purposes of calculating overtime pay. In making these claims regarding differentials, they cite to a $1.25, a $2.50, and a $3.00 differential. (51-58a; 201a)

In opposing the motion for conditional certification and in cross-moving to compel arbitration, Silver Care asserted that there were two issues involving the

payment of the differentials and that both issues had to be arbitrated because each issue involved the interpretation and practices under the CBA. (273-278a, 490-494a)

The first issue involved the payment of differentials to CNAs hired prior to May 29, 2007. After Silver Care purchased the facility, this issue was discussed with the employees' Union during negotiations for the CBA as part of the CNAs' rate of pay. (316a, Weinberger Decl. at ¶ 2 and 5) Silver Care and the Union agreed that employees hired before the purchase would continue to be paid differentials and that the practice would be grandfathered. (316a)[7] The CBA provides for a grievance and arbitration procedure for resolving any disputes regarding the payment of these differentials or the payment of overtime. (189-191a)

The three differentials that some eligible CNAs received, $1.25 an hour, $2.50 an hour, and $3.00 an hour, were inclusive of the required overtime premium. (306a, Mimna Decl. at ¶ 25) For example, the $3.00 per hour weekend differential is a gross amount comprised of the $2.00 per hour differential and an extra $1.00 per hour in overtime premium because weekend differential payments are paid at an overtime rate regardless of whether it was worked in excess of 40 hours per week. (306a)

---

[7] Silver Care and the Union concluded negotiations for a new collective bargaining agreement effective July 1, 2015. The parties agreed to end the payment of differentials to the literally few employees who were still eligible to receive the differential.

These differentials are only paid to a very limited number of employees who were employed prior to the purchase by Silver Care in May, 2007. (307a)

A very limited number of CNAs receive a completely different differential because of the way they were paid prior to May, 2007. (307a) These employees received a differential of $1.00 per hour for working any weekend shift. (307a) Since weekend work was considered "overtime" work by Silver Care regardless of whether it was work performed in excess of 40 hours per week, an additional $0.50 premium was paid for performing weekend work, resulting in the CNAs receiving a total differential of $1.50. (307a)

Silver Care asserted that the dispute regarding how the CNAs were paid the differential (whether the payment of the differential included a payment for the overtime) was based upon an interpretation and the practices under the CBA. (273-278a, 490-494a) It stated that there were provisions for the "regular rate of pay" as well as overtime. Silver Care stated that the differential pay issue was part of the regular rate of pay and overtime and that if there was a dispute regarding these practices under the CBA that this dispute had to be decided by the arbitrator, particularly since it involved the interpretation and practices under the CBA.

The second issue involved whether the payment of the differential to the CNAs (other than those that were grandfathered because they were employed prior to the purchase of the facility) for the period of April 14, 2013 through August 3,

2013 was part of their regular rate of pay under the CBA or a payroll mistake. Silver
Care asserted that inadvertently, from April 14, 2013 through August 3, 2013, CNAs
hired after May, 2007, (who were, therefore, not entitled to differential payments)
were paid a differential. (305a) This was a payroll mistake. (305a) When the error
was spotted, the employees were given a letter saying it was an error. (305a) Pizarro
herself received the letter because she was hired after May, 2007. (429a) Since there
is no realistic way to recover from the employees this overpayment, the matter was
not pursued. (306a)

Both Pizarro and Murray were hired after May, 2007, and were not entitled to
receive any differentials. (306a) Other than for the period where the error was made,
they have not been paid a differential because they were not entitled to receive
differentials. (306a) Attached to the Mimna Declaration are Pizarro's and Murray's
paystubs for two pay periods before April 14, 2013 and two payroll periods after
August 3, 2013 showing that they did not receive differentials (other than as a result
of the error), as they claim. (431a) Like Pizarro, Murray received the letter stating
that she received differential payments in error during the period of the error because
she was hired after May, 2007. (436a) Silver Care also asserted that this dispute over
the alleged mistaken payment had to be arbitrated. Silver Care stated that this was a
dispute over whether it was part of the CNA's regular pay rate or a payroll error.

*The District Court's Orders and Decisions*

In the Court's Opinion and the Court's Order, dated September 22, 2015, the Court granted conditional certification on the issue of the differentials, holding that the issue of the differential is not subject to arbitration because Plaintiffs' claims are based merely upon the failure to include the differential in the regular rate of pay resulting in Plaintiffs being paid less than time and a half. (9a) The District Court indicated that there is nothing to interpret in the CBA regarding the differentials because there is no provision in the CBA that defines "regular rate" or "differentials," and that Plaintiffs' claim is not a breach of contractual terms because the contractual terms do not exist. (9a) In essence, the District Court held that, since the CBA did not define regular rate or differentials, the District Court would determine whether the differentials included overtime as a component of the differentials. The District Court also never discussed in its opinion the issue of the alleged overpayment of the differential to the non-grandfathered CNAs for the period April 14, 2013 through August 3, 2013.

The District Court further held that the issue of the meal break is not based upon an interpretation of the CBA. The Court stated that Plaintiffs are claiming only that they were not paid for the thirty-minute meal breaks that they could not take. (7a) It was also held by the Court that Defendant's claim that "employees often join the 15 breaks with 30 their minute break" creates an issue of how they were

compensated that goes to the merits of the case and is not an issue involving the interpretation of the CBA. (7a at footnote 2)

Silver Care filed a motion for reconsideration on October 6, 2015. (531a) In this motion, Silver Care asserted that the District Court's decision that the issues involving the shift differential and meal breaks should not be arbitrated was in conflict with federal court decisions, including the Supreme Court, on what constitutes the terms of the CBA (what are express or implied terms) and whether a court or an arbitrator should determine the practices under the CBA when there are disputes over the practices under the CBA. (542a)

Subsequent to the submission of the motion for reconsideration, this Court issued its decision in *Babcock v. Butler County*, 806 F.3d 153 (3d. 2015). Silver Care wrote a letter to the District Court on December 7, 2015, stating that this decision supported Silver Care's claims that these issues had to be arbitrated. Silver Care requested that it be provided with permission to brief this issue further. (561a)

On December 16, 2015, the District Court issued an Opinion and Order denying the motion for reconsideration. (18a, 28a) The District Court again rejected Silver Care's assertion that the matter must be arbitrated. The District Court also held that *Babcock* was distinguishable from the case at bar because *Babcock* involved a motion to dismiss and the case at bar did not involve a motion to dismiss. (3-4a)

Within thirty days after the District Court's decision on the motion for reconsideration, Silver Care filed a notice of appeal. (1a) The District Court stayed the proceedings pending the appeal. (30a)

On January 25, 2016, this Court's Clerk issued an order directing the parties to address whether the District Court's order is final under 9 U.S.C. § 16 and immediately appealable, citing *Devon Robotics, LLC v. DeViedma*, 798 F.3d 136, 146-147 (3d Cir. 2015). (ECF Docket) On February 8, 2016, Silver Care submitted a response to this order. (ECF Docket) Appellees also submitted a response on that date. (ECF Docket) Appellees' response to the order did not address the jurisdictional issue. Instead Appellees argued that the appeal was untimely.

The Clerk issued another order on May 25, 2016 that it was not appropriate for the Appellee's to argue that the case be dismissed. The parties were directed to address the jurisdictional issue to the Court.

## SUMMARY OF ARGUMENT

This Court has jurisdiction over this appeal of the District Court's denial of Silver Care's motion to have the issues involving the differentials and the meal breaks arbitrated in accordance with the CBA. This Court must compel Plaintiffs to arbitrate the issues in this case. The District Court's decision contradicts Supreme Court decisions that arbitrators are supposed to resolve disputes under a collective bargaining agreement where the parties disagree on the interpretation and

application of the collective bargaining agreement, including the practices and customs which are expressed or implied thereunder. In violation of Supreme Court decisions, some of which were issued more than fifty years ago, the District Court decided that the Court, rather than the arbitrator, was the proper party to decide the interpretation of the CBA, including the practices and customs under the CBA.

There clearly is a dispute over whether the differentials included a component for overtime. Appellees state that they did not receive overtime when they were paid differential; Silver Care states their pay for the differentials already included the overtime component. The payment of the differential was discussed with the Union and was part of the practices under the CBA. The CBA specifically states that issues regarding pay are to be arbitrated. The CBA provides for the "regular rate of pay," which Silver Care asserts includes the differentials. The CBA also includes the requirement to pay "overtime" on the "regular rate of pay." (172a) The District Court's determination that there is nothing to interpret under the CBA because the payment of differentials is not explicitly stated in the CBA contradicts numerous cases, including Supreme Court cases explicitly holding that the interpretation of the collective bargaining involves "practices, usages and customs." *Transportation-Communication Employees Union v. Union Pac. R.R. Co.*, 385 U.S. 157, 160-161, 87 S.Ct. 369, 371, 17 L.Ed 2d 264 (1967). Thus, the issue of whether the payment of the differential consisted of a component of overtime involves an interpretation

of the CBA, including the "practices, usages, and customs" thereunder. *Id.* That is a dispute which must be resolved by an arbitrator, not the District Court.

The parties also dispute the practices regarding the meal breaks. Some of the Appellees claim that they had to work through all or part of their unpaid thirty-minute meal breaks and that they are entitled to overtime as a result of working through their breaks. Silver Care asserted that the practices concerning the meal breaks were not as these Appellees stated, which was that they only received a thirty-minute unpaid meal break. Silver Care said that the practices of the parties regarding the unpaid thirty-minute meal break is that this unpaid meal break is combined with one or two paid breaks. These are the practices, Silver Care asserted, even though these practices are not explicitly stated in the CBA. The District Court held that this case does not involve whether the employees were not provided with the thirty-minute meal breaks (7a); rather, according to the District Court, this case concerns only whether the employees were not paid for working through the meal break. (7a) The District Court stated that there is nothing to interpret in the CBA.

Silver Care asserts that the District Court's rationale is wrong. There are issues to interpret under the CBA before the FLSA claim can proceed. The first issue to interpret under the CBA is how long the meal breaks were and whether they were combined with one or two fifteen minute paid breaks. There is a dispute on whether the meal breaks are combined with the paid breaks. Concurrent with that issue is, if

the meal breaks are combined, what happens if there is an interruption of the meal breaks and employees have to work. Is the paid part of the break used to pay for the interruption or is the unpaid part of the meal break used to pay for the time worked? Moreover, the whole issue of how the meal breaks are provided, including any restrictions on how the meal breaks can be taken and how the parties handle an interruption of a meal break, such as answering the call bells as alleged by Appellees, are disputes over the practices under the CBA, which have to be resolved by the arbitrator since the parties disagree on what the practices are under the CBA. Moreover, under *Babcock*, the test to determine whether an employee is deemed to have worked through his/her meal break is based upon "to whom the benefit of the meal break inures." *Babcock*, 806 F.3d at 157. The resolution of these disputes is critical to the determination of which party received the pre-dominant benefit of the break and, thus, whether these practices will result in Appellees and any potential opt-in members having to be compensated for work allegedly performed during the meal breaks.

# ARGUMENT

This Court has jurisdiction over this appeal. This Court must compel the arbitration under the CBA and stay the proceedings in this case. The issues involved in this case clearly require an interpretation of the CBA.

## POINT I: THE COURT HAS JURISDICTION OVER THIS CASE

Silver Care made a motion to compel arbitration and to stay the proceedings pending the arbitration under both 9 U.S.C. §§ 3 and 4 and 9 U.S.C § 206. (447a) The District Court issued an order denying the motion to compel arbitration and denying a stay of the proceedings. (16a) The District Court also issued a similar order on Silver Care's motion for reconsideration. (28a) The District Court's denial of the motion to compel arbitration and to stay arbitration is appealable as a right under several provisions under 9 U.S.C § 16. Silver Care's appeal also was timely filed.

Under 9 U.S.C. § 3, a court may stay an action when a matter is "referable to arbitration under such agreement. In addition, 9 U.S.C. § 4 provides that a party may compel arbitration and move for an "order directing that such arbitration proceed in the manner provided for in such agreement." The court, under 9 U.S.C. § 206, may direct that arbitration be held in accordance with the agreement."

Under 9 U.S.C. § 16, an appeal may be taken as of right from: (1) an order

refusing a stay of any action under 9 U.S.C. § 3 (9 U.S.C. § 16(a)(1)(a)), (2) an order denying a petition under 9 U.S.C. § 4 to compel arbitration (9 U.S.C. § 16(a)(1)(b)), or (3) an order denying a motion to compel arbitration under 9 U.S.C. § 206 (9 U.S.C. § 16(a)(1)(c)). Another basis for an appeal is from a "final decision with respect to an arbitration" under 9 U.S.C. § 16(a)(3). Since Silver Care made a motion under both § 3 and § 4 and § 206, which was denied by the District Court, Silver Care has the right to appeal to this Court under §16 as of right from the District Court's denial of the motion to compel arbitration and to stay the action pending the arbitration.

The Supreme Court in *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009) held that the court of appeals has appellate jurisdiction over an interlocutory appeal under 9 U.S.C. § 16(a)(1)(a) where the district court has denied a stay of an action brought under 9 U.S.C. § 3 that may be referable to arbitration. *Id.* At 628.  The Court held:

> Ordinarily, courts of appeals have jurisdiction only over "final decisions" of district courts. 28 U.S.C. § 1291. The FAA, however, makes an exception to that finality requirement, providing that "an appeal may be taken from ... an order ... refusing a stay of any action under section 3 of this title." 9 U.S.C. § 16(a)(1)(A). By that provision's clear and unambiguous terms, any litigant who asks for a stay under § 3 is entitled to an immediate appeal from denial of that motion—regardless of whether the litigant is in fact eligible for a stay. Because each petitioner in this case explicitly asked for a stay pursuant to § 3, App. 52, 54, 63, 65, the Sixth Circuit had jurisdiction to review

the District Court's denial.

*Id.* at 627.

The court of appeals' jurisdiction also is not dependent on or based on the merits of the argument presented for the appellate court to review. *Id.* "The courts that have declined jurisdiction over § 3 appeals of the sort at issue here have done so by conflating the jurisdictional question with the merits of the appeal." *Id.* The issue to examine is only what is the "category" of what is being appealed, that is, whether the district court denied a stay of the action [citations omitted]. *Id.*

In the case at bar, Silver Care asked for a stay of the action while the matter was referred to arbitration. This request was denied by the District Court. Based upon the Supreme Court's holding in *Arthur Anderson LLP*, this Court perforce has jurisdiction of the appeal. Thus, the reference in this Court's Order dated on January 25, 2016 on whether the order is final under 9 U.S.C. §16 is not predicate for determining if the Third Circuit has jurisdiction. The Third Circuit has jurisdiction under 9 U.S.C. §16(a)(1)(a) for denying the stay of the action. *Arthur Anderson LLP*, 556 U.S. at 627.

Similarly, finality is not the predicate for jurisdiction for an appeal of a petition under 9 U.S.C. §4 to compel arbitration (9 U.S.C. §16(a)(1)(b)) or from an order denying a motion to compel arbitration under 9 U.S.C. §206 (9 U.S.C. § 16(a)(1)(c)). In *Edwards v. Hovensa, LLC*, 487 F.3d 355 (3d Cir. 2007), the court

held that it had appellate jurisdiction under 9 U.S.C. §16(a)(3) to review the district court's denial of a motion to compel arbitration and to stay the proceedings pending the arbitration. *Id.* 357. These issues are precisely the issues that Silver Care has raised before this court: namely that the District Court refused to compel arbitration and stay the proceedings pending the arbitration. Thus, under *Edwards*, the District Court's denial of Silver Care's motion to compel arbitration and to stay proceedings is a final order providing this Court with appellate jurisdiction in this matter.

Moreover, there has been no dispute that for over sixty years that a collective bargaining agreement is an agreement under the FAA, and that the parties to the agreement are subject to the FAA. *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America*, 207 F.2d 45 (1953). This Court in *Tenney Engineering, Inc.*, held that the FAA applied to collective bargaining agreements except for those collective bargaining agreements covering workers, such as seaman, railroad workers, engaged in interstate commerce. (The employees in the case at bar work at a nursing home and the collective bargaining agreement is not exempt from the FAA under the interstate commerce exemption in Section 1, 9 U.S.C. §1.) In *Tenney Engineering, Inc.,* the Third Circuit held that it had jurisdiction under Section 3 of the FAA, 9 U.S.C. §3 to determine whether the district court should compel arbitration under a collective bargaining agreement and grant a stay of an action brought by the company against the union relating to a strike. Subsequently, this

Court held in *Palco v. Airborne Express, Inc.,* 372 F.3d 58, 5988 (3d Cir. 2004), that *Tenney Engineering, Inc.*'s analysis of the exemption under Section 1 of the FAA was affirmed by the Supreme Court in *Circuit City v. Adams*, 532 U.S. 105 (2001). *See also International Brotherhood of Teamsters Local Union v. Kienstra Precast, LLC*, 702 F.3d 954 (7d Cir. 2012) (indicating that FAA applies to denial of motions to compel arbitration but that the Court lacked jurisdiction because the collective bargaining agreement covered workers who were transportation workers, making the FAA inapplicable under Section 1).

This Court's decision in *Devon Robotics, LLC v. DeViedma,* 798 F.3d 136, 146-147 (3d Cir. 2015) further supports that the Third Circuit has jurisdiction over this appeal. Devon Robotics, LLC sued defendants, including a general counsel, DeViedma, for breach of fiduciary duty, tortious interference with current and prospective contractual relations, defamation and conspiracy over a failed agreement to distribute robotic medical devices. *Id.* at 139-40. The parties' agreement contained an arbitration clause. *Id.* at 139. DeViedma filed a motion to dismiss the complaint, arguing in part that the case should be dismissed in favor of arbitration. *Id.* at 140. The district court granted the motion in part, but allowed two of the claims to proceed. *Id.*

After 17 months of discovery and litigation, Deviedma filed a motion for summary judgment on the two remaining claims, arguing again that they should be

arbitrated. *Id.* The district court denied summary judgment. *Id.* Deviedma then filed an interlocutory appeal of the district court's order denying summary judgment on the arbitration issue. *Id.* The plaintiff sought to dismiss the appeal for lack of jurisdiction on various grounds, including that the order denying summary judgment was not an order denying a motion to compel arbitration, and thus not appealable under 9 U.S.C. § 16. *Id.*

The Court granted the plaintiff's motion to dismiss the appeal. *Id.* at 148. The Court reiterated that the denial of a summary judgment motion is not a final order for purposes of conferring appellate jurisdiction. *Id.* at 141. However, the Court also noted that the FAA itself provides appellate jurisdiction over certain types of orders under the FAA, including orders denying an application to compel arbitration. *Id.* However, after looking at the plain language of 9 U.S.C. §16 and analyzing the FAA in general, the Court held that section 16 provides no right to appeal from an order denying summary judgment. *Id.* at 142-44.

The Court rejected Deviedma's argument that the order denying summary judgment should be construed as a motion to compel arbitration. *See id.* at 145. In doing so, the Third Circuit reviewed the holdings of other circuits and ultimately adopted the approach taken by the Fourth and Tenth Circuits, holding that appellate jurisdiction under 9 U.S.C. § 16 should be determined by reviewing: (a) the caption of the underlying motion; (b) the relief requested in a motion, rather than the title of

the motion; and (c) the label and operative terms of the district court's order. *Id.* at 145-47. The Court also held that a party's failure to cite to the governing provision of the FAA is not dispositive. *Id.* at 147.

The Court noted that it should take a "limited look" beyond the caption of the underlying motion for the purpose of ensuring that a true motion to compel is not overlooked. *Id.* at 146. The Court also concluded that, to be appealable under the FAA, the motion must at least request an order compelling arbitration or an order directing that arbitration proceed. *Id.* at 147. Finally, the Court noted that appellate jurisdiction is not precluded just because a motion seeks to compel arbitration as an alternative or additional form of relief. *Id.*

Applying the factors enumerated above to the case before it, the Court found that the district court's order made no reference to a motion to compel or to the FAA, that the Deviedma's motion was clearly one for summary judgment and not to compel arbitration because the motion was not captioned as a motion to compel but as a motion for summary judgment, the motion did not reference the applicable sections of the FAA but instead referenced FRCP 56, and the motion did not request an order compelling arbitration but only requested summary judgment and dismissal with prejudice. *Id.* at 147-48. Accordingly, the Court held that there was no jurisdiction under 9 U.S.C. § 16, and it dismissed the appeal. *Id.* at 148.

Unlike Deviedma's motion in *Devon Robotics*, all of the factors the Court identified as elements that the appeal involves a motion to compel arbitration under the FAA are present in the case at bar. First, Silver Care's Notice of Cross-Motion filed in the district court specifically stated that it was a motion "to compel arbitration and dismiss or stay proceedings," specifically citing the FAA at 9 U.S.C. § 3. (447a) The title of Appellant's memorandum of law in support of the cross-motion likewise referenced that it was a motion to dismiss or stay the proceedings pending arbitration. (254a) Point I of the memorandum of law is entitled "The Court Must Stay or Dismiss this Action Because Plaintiffs Have Not First Exhausted the Required Grievance and Arbitrations Procedures Contained in the CBA." (273a) The FAA, specifically 9 U.S.C. § 3, is cited on the very first page of the memorandum. (260a) The entirety of Point I of the memorandum is devoted to argument requesting that the District Court stay or dismiss the matter pending arbitration. (*Id.* at 14-20.)

The District Court also recognized Silver Care's motion as a motion to stay or dismiss the proceedings and to compel arbitration. Pages 3 through 9 of the opinion denying the motion are devoted entirely to a discussion of the CBA and whether Appellee's FLSA claims are intertwined with the CBA such that arbitration is required. (4-10a) In its order, the District Court denied the cross-motion, holding that "defendant's Cross-motion to Dismiss for Lack of Jurisdiction and Stay

Proceedings [41] be, and same is hereby is DENIED…." (16a.)  Clearly, the District Court denied the motion to compel arbitration and stay the proceedings.

Moreover, Silver Care's motion for reconsideration, again, directly requested that the District Court reconsider its decision which denied compelling the arbitration of these issues and staying the proceedings. (541-546a) Again, the FAA was cited on page 1 of the memorandum. (537a.) In its order regarding reconsideration, the District Court stated it was denying this relief. (28a)

Silver Care's omission of citations to 9 U.S.C. § 4 and § 206 from its motion is not dispositive. *Devon Robotics*, 798 F.3d 136, at 147. Nor does it matter that Silver Care made its motion along with a motion to dismiss for lack of subject matter jurisdiction, in the alternative, under FRCP 12(h)(3). *Id.*

Instead of addressing the issue posed by the Court's order, Appellees opted instead to make a collateral attack on the timeliness of Silver Care's appeal that is both procedurally inappropriate and substantively lacking in merit for the reasons set forth below. The basis for their contention is that Appellant did not immediately file a notice of appeal of the District Court's order entered on September 15, 2016 denying their motion to stay the action and compel arbitration, but instead filed its notice of appeal after the District Court's order entered December 16, 2015 denying Appellant's motion for reconsideration of the September 15, 2016 order. Appellees argue that the appeal is untimely under FRAP 4 as a result of this sequence of events.

Appellees allege that Silver Care's motion for reconsideration of the September 15, 2016 order is not a motion which extends the time to file a notice of appeal. Appellees are simply incorrect.

As recognized by the District Court itself in its Order of December 16, 2015, a motion for reconsideration can be "treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e), or as a motion for relief from a judgment or order under Fed. R. Civ. P. 60(b), or it may be filed pursuant to Local Civil Rule 7.1(i)." (20a, n.1.) In fact, the District Court did grant in part and deny in part Silver Care's motion for reconsideration, specifically modifying its prior order and granting relief from its prior order such that it is clear that the District Court treated the motion under both FRCP 59 and 60. (28-29a)

As either a motion under Rule 59 or Rule 60, the time to appeal from the District Court's September 22, 2015 opinion and order was extended to the disposition of Silver Care's motion for reconsideration. FRAP 4(a)(4)(A). "Although Rule 59 does not explicitly mention motions for reconsideration, [the United States Court of Appeals for the Third Circuit] has held that for purposes of Rule 4(a), a motion for reconsideration qualifies as a motion under Rule 59(e) to alter or amend a judgment." *First Jersey Nat'l Bank v. Dome Petroleum Ltd.*, 723 F.2d 335, 337 (3d Cir. 1983), citing *Richerson v. Jones*, 572 F.2d 89, 93 (3d Cir. 1978). Thus, contrary to Appellees' contention, Silver Care's timely motion for

reconsideration is, in fact, one of the motions listed in FRAP 4(a)(4)(A) because, as recognized by this Court, it is treated as a motion under Rule 59(e) for purposes of FRAP 4(a).

The order denying Silver Care's motion for reconsideration was entered on December 16, 2015. (28-29a) Silver Care filed its notice of appeal under FRAP 3 on January 14, 2016, which is within the time for filing a notice of appeal as set forth in FRAP 4(a)(1)(A). (1a) Accordingly, Appellees' collateral attack against the timeliness of the appeal must be dismissed as both procedurally inappropriate and/or on the merits.

In sum, Silver Care moved to compel arbitration and to stay the proceedings. The District Court explicitly denied Silver Care's motion to compel arbitration and to stay the action. Silver Care timely filed an appeal to this Court. This Court has jurisdiction of this appeal under the FAA.

## POINT II: APPELLEES MUST BE REQUIRED TO ARBITRATE THEIR CLAIMS REGARDING THE DIFFERENTIALS AND THE MEAL BREAKS

Whether the Appellees have any claim for overtime for not including the differentials as part of the regular rate of pay for calculating overtime and any claim for allegedly not being paid overtime for working during their meal breaks are based upon the interpretation and application of the CBA. The issues involving these claims must be arbitrated before this action can proceed.

The standard of review of the District Court's actions in this case is that this Court reviews the District Court findings of facts based upon clear error but exercises plenary review over questions of law. The District Court in this case made not only clear errors of fact but misapplied applicable law in deciding this case.

In *Bell v. Southeastern Pennsylvania Transp. Authority*, 733 F.3d 490 (3d Cir. 2013), the Third Circuit held that there are some FLSA claims that are "inevitably intertwined with the interpretation or application of the collective bargaining agreement." *Id.* at 494. *Babcock* also held that, while a FLSA claim may not depend on a right in the CBA, the CBA, however, may need to be interpreted to ascertain if there is such a FLSA claim. 806 F.3d at 158. "[I]f a FLSA claim depends on the disputed interpretation of a CBA provision, an employee must first go to arbitration-through the representative union-before vindicating his or her rights in federal court under the FLSA." *Bell,* 733 F.3d at 494.

A collective bargaining agreement also is not an "ordinary contract for the purchase of goods and services, nor is it governed by the same old common law concepts." *Transportation-Communication Employees Union*, 385 U.S. at 160-161. "The collective bargaining agreement covers the whole employment relationship." *United Steelworkers of America v. Warrior & Gulf Nav. Co..*, 363 U.S. 564, 578-579 (1960). The practices, usage and custom must be used to interpret a collective bargaining, *Transportation-Communication Employees Union*, 385 U.S. at 161.

Thus, a collective bargaining agreement consists of express and implied terms. *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n,* 491 U.S. 299 (1989). In determining that a dispute was subject to arbitration at the National Railway Adjustment Board, the Court in *Consolidated Rail Corp.* held that:

> This case, then, turns on whether the inclusion of drug testing in periodic and return-from-leave physical examinations is arguably justified by the parties' collective-bargaining agreement. Neither party relies on any express provision of the agreement; indeed, the agreement is not part of the record before us. As the parties acknowledge, however, collective-bargaining agreements may include implied, as well as express, terms. See, *e.g., Northwest Airlines, Inc. v. Air Line Pilots Assn. Int'l,* 442 F.2d 251, 253-254 (CA8), cert. denied, 404 U.S. 871, 92 S.Ct. 70, 30 L.Ed.2d 116 (1971). Furthermore, it is well established that the parties' "practice, usage and custom" is of significance in interpreting their agreement. See *Transportation Union v. Union Pacific R. Co.,* 385 U.S. 157, 161, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966). This Court has observed: "A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts which control such private contracts. '... [I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.... The collective agreement covers the whole employment relationship. It calls into being a new common law-the common law of a particular industry or of a particular plant.' " *Id.,* at 160-161, 87 S.Ct., at 371 (citation omitted) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S., at 578-579, 80 S.Ct., at 1350-1351).

*Id.* at 491 U.S. 311.

Accordingly, Courts have consistently held that practices, usages and customs are parts of the collective bargaining agreement. *Turner v. City of Philadelphia,* 262

F.3d 222, 226 (3d Cir. 2001) (a custom or practice can become part of a collective bargaining agreement even in the absence of formal negotiations regarding the custom or practice); *Bonnell/Tredegar Indus., Inc. v. NLRB*, 46 F.3d 339, 344 (4th Cir.1995) (implied terms become part of the collective bargaining agreement and cannot be removed without violating Section 8(d) of the National Labor Relations Act, 29 U.S.C.§158(d)). Therefore, if there are disputes over the grandfathered terms (for example, such as in the case at bar regarding whether the differential includes a component for overtime and whether some CNAs were mistakenly paid because they were not grandfathered), those disputes must be arbitrated. *Consolidated Rail Corp.* at 491 U.S. 311.

There also is a strong federal policy favoring arbitration of labor disputes under a collective bargaining agreement. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960). Disputes should be arbitrated unless excluded from coverage under the arbitration provision. *Id.* "It is the arbitrator construction" that Silver Care and the Union bargained for to determine disputes under the CBA. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). Disputes with employees under the FLSA, such as the one at bar, may be required to be arbitrated. *Quilloin v. Tenet Healthsystem Philadephia*, 673 F.3d. 221 (3d Cir. 2012).

The CBA, in the case at bar, also contains a broad arbitration clause for the interpretation and application of issues arising under its provisions. (189-190a) Silver Care will not raise any procedural issues to arbitrate these claims.[8] As such, and for the reasons set forth below, Appellees' claims must be grieved and arbitrated under the CBA, and the Court should stay this case and require that the Appellees be compelled to follow the grievance and arbitration procedure in the CBA. The Federal Arbitration Act, at 9 U.S.C. 3, provides that a court may stay a case "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . ." Clearly the disputes involving the regular rate and the meal break are "referable to arbitration." *Id.*

(a) *The Issues Involving the Differential Must Be Arbitrated.*

The two issues involved in the differential claim (whether the differentials paid to the grandfathered employees included a payment for overtime and whether the payments of the differentials made to non-grandfathered CNAs for several months were mistaken payments) involve an interpretation and application of the CBA. These disputes must be determined by an arbitrator, not by the District Court.

---

[8] In the new collective bargaining agreement, the grievance and the arbitration procedure were not altered except to extend the time to file grievances. Silver Care will not raise any procedural issues with respect to arbitrating the disputes in the case at bar.

There clearly is a dispute in the case at bar whether the payment of the differentials included a payment for overtime as a component of the payment.[9] Silver Care asserts that the differentials are part of the employees' regular rate of pay. (316a) The Union and Silver Care agreed that differentials would be grandfathered for employees who received them prior to the purchase by Silver Care. Moreover, the CBA also requires the payment of overtime on employees' regular rate of pay. If there is a dispute over whether the differentials included a payment of overtime

---

[9] By way of example, the three differentials cited by the Appellees, $1.25 an hour, $2.50 an hour, and $3.00 an hour, were intended to include the required overtime premium. As an example, the $3.00 per hour weekend differential is a gross amount comprised of the $2.00 per hour differential and an extra $1.00 per hour in overtime premium because weekend differential payments are paid at an overtime rate regardless of whether it was worked in excess of 40 hours per week. These differentials were only paid to a very limited number of employees who were employed prior to the purchase of the building by Silver Care in May, 2007. What was intended at the time of the negotiation of the continuation of these differentials is clearly an issue for the arbitrator.

A very limited number of CNAs received a completely different differential because of the way they were paid prior to May, 2007. Appellees do not even cite this differential or claim that this differential is paid unlawfully, or that any employees who were paid this differential worked more than 40 hours in a week. They do not even claim and do not provide any evidence that these employees are subject to the same common policy. These employees received a differential of $1.00 per hour for working any weekend shift. Since weekend work was considered "overtime" work by Silver Care regardless of if it was work performed in excess of 40 hours per week, an additional $0.50 premium was paid for performing weekend work so that the total differential these employees received was $1.50. Even if Appellees believe this differential was paid improperly, though none of the Appellees received this differential, this would also be an issue for the arbitrator.

and what portion of the differential is part of the regular rate of pay and what portion is for overtime, then that would be a dispute under the CBA as to what the regular rate of pay is under the CBA.

In *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990), the Third Circuit faced this exact issue of determining what the regular rate was for an employee in an FLSA action. There, the plaintiff (like Pizarro[10], Murray and Ingalls who were mistakenly paid differentials), was actually paid overtime. However, Vadino claimed that his "regular rate" was not what was actually paid, but, instead, that he should have been paid at a "journeyman" rate under his CBA. Here, Appellees' claim, in essence, exactly the same thing: that rather than using their actual regular rate, they should have been paid at a higher rate due to their receipt of the differentials. In *Vadino*, the Third Circuit squarely held that union-represented employees could not proceed with their FLSA claim where the court would be required to interpret the intent of or a disputed provision of the underlying collective bargaining agreement. As the court stated:

> [W]hile claims resting on the language of section 7(a) [of the FLSA, 29 U.S.C. § 207(a)] are clearly cognizable under that section, we believe that claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301.

---

[10] Pizarro's paystubs show that she was paid for overtime. (201a.) Appellees acknowledge that employees were paid overtime. Their claim is that differentials were not included in the overtime calculations.

*Vadino*, 903 F.2d at 266. Since the wages at issue in the *Vadino* case could not be determined until the applicable wage rate under the collective bargaining agreement was resolved, the plaintiff was required to exhaust his contractual remedies. Based upon LMRA preemption, the *Vadino* court affirmed summary judgment for the employer.

The District Court held that the case at bar was "different" than *Vadino* because the Appellees in this case were not seeking extra compensation like the Plaintiff was in *Vadino*. (9a) In addition, the District Court held that since there were no provisions in the CBA that defines "differentials" or "regular rate of pay, "[Appellees'] claims therefore cannot be construed to be a breach of contractual terms that do not exist." (9a)

This case, however, is not different than *Vadino*. Like *Vadino*, this case involves determining the rate of pay that Appellees should have received. The case at bar involves an interpretation and application of the CBA on what the practices, usages and customs are for the payment of the differentials and the regular rate of pay under the CBA. There obviously is a disagreement between the parties over whether the differentials included a payment of overtime as a component. If there is a disagreement involving the interpretation and application, it is clearly for the arbitrator to resolve that dispute. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 599 (1960).

Moreover, the District Court's statement that there should not be an arbitration because there are no contractual terms to construe clearly contradicts several Supreme Court decisions and Third Circuit decisions that the terms involving a collective bargaining agreement include both explicit and implicit terms. *Transportation-Communication Employees Union*, 385 U.S. at 160-16; *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n,* 491 U.S. at 311; *Turner v. City of Philadelphia*, 262 F.3d at 226. The practices, customs, and usages of the parties in this case are part of interpreting the CBA. The grandfathering of the differential pay makes the differential a term of the CBA. The differentials were part of the "regular rate of pay" and part of the requirement to pay "overtime" on this "regular rate of pay." (172a) It was part of the negotiations of the parties for the terms of a new collective bargaining to replace the CBA.[11]

Thus, issues regarding the rate of pay would have to be arbitrated because it depends upon the intent and meaning of the phrase "regular rate of pay" in the CBA, which is a "disputed interpretation of a CBA provision." *Bell*, at 777 F.3d at 494. Plaintiffs "cannot circumvent the necessity" that they must follow the grievance and arbitration procedure to determine the issues regarding the payment of the differentials. *Vadino*, 903 F.2d at 266.

---

[11] The differentials were part of a discussion that resulted in a new collective bargaining agreement. The differentials were eliminated in the new collective bargaining agreement.

44

Similarly, the issue of the mistaken payment of the differentials to employees hired after May, 2007, is clearly an issue involving the interpretation and application of the CBA as to what the regular rate of pay is for such employees for the purpose of calculating overtime. In denying Silver Care's application to compel arbitration, the District Court failed to address the issue of the mistaken payments.

Clearly, the applicable wage rate for CNAs, who were hired after May, 2007 and who were mistakenly paid the differentials for several months in 2013, must first be determined through arbitration prior to the consideration of any claim for overtime wages. The Court in *Vadino* held that "We are not aware of, nor has Vadino cited, any case where a court has resolved as a threshold matter in a FLSA action a dispute concerning the amount of wages that should have been paid under the terms of the collective bargaining agreement." 903 F.2d at 266. In *Vadino*, the Court further held that:

> It follows that in the event of a dispute as to the correct wage rate under a collective bargaining agreement and a consequential claim under the overtime provision of the FLSA, the procedure we envision is to decide the contract interpretation issue through grievance procedure to arbitration. If exhaustion can be excused than an employee may file a section 301 claim...Concurrent with that, the employee may bring a FLSA claim, but the FLSA overtime claim would be dependent upon the resolution in the Section 301 claim of the contract interpretation issue.

*Id.*

There is a dispute of what the regular rate of payment should be for those CNAs for the few months where the differential was paid to these employees. If the

differentials are not part of the regular pay but a mistaken payment as Silver Care contends, there is no claim for overtime.[12] Based upon this Court's holding in *Vadino* and the Supreme Court's mandate that the arbitrator determine the dispute over the amount of the wages, the dispute over the payment of the differential for the non-grandfathered CNAs must be determined first by the arbitrator. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 599 (1960).

In sum, Appellees must be compelled to first follow the grievance and arbitration procedures in the CBA regarding the issues involving the differentials (whether it contains a component for overtime and whether it was mistakenly paid to certain CNAs). The case at bar also should be stayed pending the arbitration. This is especially true where, as here, and in *Vadino*, the employees did receive overtime but are claiming that overtime should have been figured based upon a different regular rate of pay. "[A]n employee cannot circumvent the necessity of complying with the LMRA [Labor Management Relations Act] procedure to get a determination of his or her right to the wages claimed." 903 F.2d at 266.

(b) *The Issues Involving the Meal Break Must Be Arbitrated.*

There also are disputes between the parties involving the practices with respect to meal breaks. These issues must be arbitrated under the CBA in order to

---

[12] If the arbitrator rules that it was part of their regular rate of pay, then, like the grandfathered employees, there would still be an issue of whether the differentials included a component for overtime.

determine Appellees' claims that they are entitled to overtime for working through the meal breaks. This Court's decision in *Babcock* further reinforces that these issues must be arbitrated.

In denying the motion to compel arbitration, the District Court held that there was no issue that requires an interpretation of the CBA. (a7) The District Court stated that there was no issue because the CNAs were not claiming that they were entitled to meal breaks but rather that they were working through the meal break and that this dispute over the payment is "distinct from any right conferred by the CBA." (8a)

Silver Care asserts that the District Court is wrong that the CBA does not need to interpreted with respect to the meal break claim. In *Babcock*, this Court held that the test of whether an employee is deemed to have worked through his/her meal break is based upon "to whom the benefit of the meal break inures." 806 F.3d at 157. As the Court stated, this is a determination made "on a case-by-case basis" based upon a "fact-intensive inquiry." *Id.* The Court further held in *Babcock* that one of the "relevant" factors to consider is a collective bargaining agreement. The characterization of the breaks by the parties "is a factor in analyzing to whom the predominant benefit of the period inures."[13] *Id.* at 158. In order to determine whether

---

[13] While Silver Care's motion for reconsideration was pending, Silver Care wrote to the District Court of the decision in *Babcock*. Silver Care requested permission to brief the impact of this Court's decision. Silver Care asserts that the facts in *Babcock* are in fact similar to the case at bar. The District Court held in its

overtime is owed in this case, based upon "to whom the benefit of the meal break inures," there must be an interpretation of the CBA. *Id.*

The first issue to interpret under the CBA is how long the meal breaks were for the CNAs. There is a dispute concerning if the thirty-minute unpaid meal break is combined with one or two fifteen minute paid breaks. Appellees claim that they had to work through all or part of their unpaid thirty-minute meal breaks and that they are entitled to overtime as a result of same. Appellees do not allege that this thirty-minute unpaid meal break is combined with one or two paid breaks.

Silver Care, however, asserts that the practices under the CBA are not what the Appellees allege. The CBA provides for two paid fifteen-minute breaks in addition to a thirty-minute unpaid meal break. Silver Care submitted evidence that there were two different practices regarding the combination of meal breaks and how they were paid: in four of the five sections of the facility, the policy was to add on one of the other two paid fifteen minute breaks to the meal break, making for a forty-five-minute break of which thirty minutes is unpaid and fifteen minutes is paid. The practice in the other section of the facility was to add on the two paid fifteen minute breaks to the thirty-minute meal break, making for a one hour break of which thirty minutes is unpaid and thirty minutes is paid. Silver Care asserted that these are the

---

Decision denying the Motion for Reconsideration that Babcock was not dispositive.

practices even though these practices are not explicitly stated in the CBA.

Since there is a dispute over the length of the meal breaks, how can a determination be made whether the CNAs worked during the meal breaks when it is not clear how long the meal breaks are for the CNAs? This dispute over what the practices are regarding the length of the meal break is for the arbitrator to interpret and apply the CBA and to resolve. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 599 (1960). As indicated above, the practices, usages, and customs become part of the CBA.

Not only must the arbitrator determine whether the meal breaks were combined, the arbitrator must determine the practices, customs and usages of the parties with respect to what happens if an employee allegedly is interrupted during a meal break. Is the interrupted time considered part of the paid portion of the break or the unpaid portion of the break? For example, an employee has a forty-five-minute break, consisting of the unpaid thirty-minute meal break and one paid fifteen-minute break. The employee is interrupted for fifteen minutes. Is the interruption deemed part of the paid fifteen minutes or part of the thirty-minute unpaid meal break? If the interruption is considered part of the paid time, then the employee can have no claim for payment because the employee was already paid for that time. That employee may have a claim for a breach of the CBA for paid break time being interrupted but the employee would not have an overtime claim under the FLSA. Clearly, there

cannot be a resolution of the overtime claim, including how much overtime would be owed for the interruption, until there is a determination of what the practices were under the CBA regarding payment for interruptions during the meal breaks.

In addition to determining the issue of what part of the break is used to pay for interruptions, the arbitrator must determine other practices regarding the meal breaks, including any restrictions on the employees in taking their meal breaks, what are considered interruptions of the meal breaks, and how interruptions are handled during the meal breaks, such as when, as alleged by Appellees, that they have to answer call bells. For example, if an employee is interrupted twice for five minutes because of answering call bells, once at the end of the break and once at the beginning of the break. Would these types interruptions change whether the interruptions are part of the paid time or the unpaid time? The determination of these disputed practices, including how long are the breaks, what happens during an interruption regarding paid or unpaid time, and what are the practices when a meal break is given are important to the resolution of whether Silver Care or the employees received the pre-dominant benefit of the break. [14]

---

[14] The resolution by the arbitrator of the practices and customs under the CBA regarding meal breaks may result in case being dismissed under *Babcock*, including because this may result in a resolution of who receives the predominant benefit and also because the CBA, like in *Babcock*, also provides for overtime for work beyond forty hours.

In denying Silver Cares' motion for reconsideration and in a response to a letter by Silver Care requesting that it be allowed to brief the impact of *Babcock* on this case, the District Court held that *Babcock* was inapposite because *Babcock* involved a motion to dismiss the complaint and this case involves a motion for conditional certification. (20a) As the foregoing indicates, however, *Babcock* is relevant to this case. The District Court made an error of law in analyzing and deciding the issues involving whether the meal breaks had to be arbitrated.

The District Court compounded the error by deciding the issue of whether there should have been conditional certification on the meal breaks. Although the District Court's decision to certify conditionally the collective action is not before the Court except to the extent to that there should have arbitration of these disputes over the meal break before conditional certification, this Court, as part of its decision requiring arbitration, should vacate the District Court's conditional certification. If the practices are not clear with respect to meal breaks and these matters must be arbitrated, there could not have been even a "modest factual showing" to establish that the meal breaks were part of a single policy or plan that is required to certify conditionally a collective action when it is not clear what the policy is regarding meal breaks. *Zavala*, 691 F.3d 527, 536 n. 4 (2012).

In sum, the issue of the meal breaks also must be arbitrated. There must be a determination of the practices regarding the meal breaks. This must be made even

before there can be determination as to whether Silver Care or the CNAs received the predominant benefit of the meal period and whether there was a violation of the FLSA.

## CONCLUSION

The Appellees must be required to arbitrate the disputes involving the differentials. They also must be required to arbitrate the issue involving the meal breaks. Requiring the Appellees to arbitrate these matters is consistent with the decisions of the Supreme Court and this Circuit. The employees have collectively bargained for the arbitrator, and not the court, to interpret and apply a collective bargaining agreement. This action also should be stayed pending the arbitration. The arbitrator must resolve these issues before the FLSA claims can proceed.

The Court must vacate the District Court's orders and compel the Appellees to arbitrate and for such other and further action that this Court deems appropriate.

Dated: July 18, 2016.

Respectfully submitted

/s/ Stuart Weinberger
Goldberg and Weinberger LLP
Attorneys for Appellant SCO, Silver Care
Operations, LLC
630 Third Avenue, 18th Floor
New York, NY 10017
(212) 867-9595 (Ext. 313)

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

The undersigned hereby certifies pursuant to LAR 46.1 that the attorney(s) whose name appears on the Brief of Defendant-Appellant SCO, Silver Care Operations, LLC was duly admitted to the Bar of the United States Court of Appeals for the Third Circuit on November 22, 1999, and is presently a member in good standing at the Bar of said Court.

Dated: July 19, 2016
     New York, NY

                        /s/ Stuart Weinberger, Esq.
                        Stuart Weinberger, Esq.
                        Goldberg and Weinberger LLP
                        *Attorneys for Defendant-Appellant*
                        *SCo, Silver Care Operations, LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies pursuant to Rule 32(a)(7)(B), that the Brief of Respondent Defendant-Appellant SCO, Silver Care Operations, LLC complies with the Court's type-volume limitation. The Brief consists of 12, 750 words.

Dated: July 19, 2016
        New York, NY

/s/ Stuart Weinberger, Esq.
Stuart Weinberger, Esq.
Goldberg and Weinberger LLP
*Attorneys for Defendant- Appellant*

# AFFIDAVIT OF SERVICE

## IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## 16-1101

TYMECO JONES, IESHA BULLOCK, and TEAIRRA PIZARRO, on behalf of themselves and those similarly situated,

*Plaintiffs-Appellees*

v.

SCO, SILVER CARE OPERATIONS, LLC, d/b/a ALARIS HEALTH AT CHERRY HILL

*Defendant-Appellant*

COUNTY OF PHILADELPHIA

I, Frederick W. Wright, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

I am retained by Stuart A. Weinberger, Esq., Attorney for Defendant-Appellant, that on this 19th day of July 2016, I deposited two copies of the Brief and Appendix served by ECF.

Travis B. Martindale-Jarvis, Esq.
Swartz Swidler
1101 Kings Highway North
Suite 402
Cherry Hill, NJ 08034

Filing to the Court has been perfected on the same date as above.

/s/Frederick W. Wright_____
FREDERICK W. WRIGHT
Wright Appellate Services
517 Jefferson Building
1015 Chestnut Street
Philadelphia, PA 19107
(215) 733-9870*(800) 507-9020*FAX (215) 733-9872
Email address: appealfww@aol.com

## VIRUS CHECK COMPLIANCE

This document has been scanned for viruses and is reported by Symantec Antivirus Corporate edition ® to be virus free as of the date it was scanned. All reasonable measures have been taken to protect all of *Wright Appellate Services, LLC* documents, but we cannot guarantee against viruses that have yet to be discovered. The PDF file is identical to the hard copy.

*Frederick W. Wright*
Frederick W. Wright
*Wright Appellate Services, LLC*
1015 Chestnut Street, Suite 517
Philadelphia, PA 19107
(215) 733-9870
Email address: appealfw@wrightappellateservices.com

Case 1:13-cv-07910-NLH-AMD   Document 84   Filed 01/14/16   Page 1 of 1 PageID: 1037

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SCO, SILVER CARE OPERATIONS, LLC,
                    Defendant,

                                                    NOTICE OF APPEAL
              v.                                    CIVIL ACTION NO.: 13-7910
                                                    (NLH/AMD)
TYMECO JONES, IESHA BULLOCK, and
behalf of themselves and those similarly situated,
                    Plaintiffs.

Notice is hereby given that SCO, Silver Care Operations, LLC, ("Defendant") the

Defendant in the above named case, hereby appeals to the United States Court of Appeals for the

Third Circuit from those parts of the order of the District Court, dated September 22, 2015, and

those parts of the order, dated December 16, 2015, denying Defendant's  motion for

reconsideration of that September 22, 2015 order, which denied Defendant's application to compel

arbitration under a collective bargaining agreement of the issues and claims in this case involving

the practices, provisions and payments (including but not limited to the payment of overtime)

regarding meal breaks and  differentials/shift differentials/premiums and to dismiss and or stay

this action pending the arbitration.

Dated: January 13, 2016

/s/ Stuart Weinberger
Stuart Weinberger, Esq.
Goldberg and Weinberger LLP
Attorney for SCO, Silver Care Operations, LLC
630 Third Avenue, 18th Floor
New York, NY 10017
(212) 867-9595 (Ext. 313)

-1a-

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

TYMECO JONES, IESHA BULLOCK,    Civil No. 13-7910 (NLH/AMD)
and TEAIRRA PIZARRO, on
behalf of themselves and
those similarly situated,         **OPINION**

      Plaintiffs,

  v.

SCO, SILVER CARE OPERATIONS
LLC d/b/a ALARIS HEALTH AT
CHERRY HILL,

      Defendant.

---

**APPEARANCES**

JUSTIN L. SWIDLER
MATTHEW D. MILLER
SWARTZ SWIDLER, LLC
1101 KINGS HWY N, STE. 402
CHERRY HILL, NJ 08034
    On behalf of plaintiffs

STUART WEINBERGER
GOLDBERG & WEINBERGER LLP
630 THIRD AVENUE
18TH FLOOR
NEW YORK, NY 10017
    On behalf of defendant

**HILLMAN**, District Judge

    Presently before the Court is the motion of plaintiffs to
conditionally certify their collective action claims for
defendant's alleged violations of the federal Fair Labor

Standards Act.  Also pending is defendant's cross-motion to dismiss or stay the action pending arbitration.  For the reasons expressed below, plaintiffs' motion will be granted, and defendant's motion will be denied.

### BACKGROUND

In considering defendant's prior motion to dismiss, the Court set forth the facts as pleaded by plaintiffs in their complaint.  The Court restates plaintiffs' allegations for ease of reference in considering the pending motions:  Plaintiffs Tymeco James, Iesha Bullock, and Teairra Pizarro are employed by nursing home defendant, SCO, Silver Care Operations LLC d/b/a Alaris Health at Cherry Hill, as certified nursing assistants.  They claim that defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and New Jersey's Wage and Hour Law and New Jersey's Wage Payment Law, when it failed to properly pay them for hours they worked in excess of 40 hours per week.  Plaintiffs James and Pizarro also claim that defendant violated the federal and state wage requirements by deducting thirty minutes of paid time for meal breaks during over-night shifts, when plaintiffs rarely, if ever, took an uninterrupted break during their normal shifts, because there are not enough CNAs working during the night shifts to permit them to take a meal break.

The Court denied defendant's motion to dismiss plaintiffs'

2

complaint, citing to Davis v. Abington Memorial Hosp., 765 F.3d 236, 241 (3d Cir. 2014), and finding that the three named plaintiffs each demonstrated, through their pleadings and exemplar pay stubs, that they worked at least one 40-hour work week, where the hours they worked in excess of 40 hours were not properly compensated, either by an allegedly incorrect calculation of overtime pay, or by an allegedly unlawful 30-minute deduction for unused meal breaks.  For example, plaintiff Bullock showed a 2-week paystub for the pay period of June 23, 2013 to July 6, 2013, where she worked 40 regular hours and 3.75 overtime hours.  (First Amended Complaint ¶ 68.)  Bullock claims that due to inappropriate calculations of the variety of hourly premiums or shift differentials, she was shorted $1.20 for overtime pay during that pay period.  (FAC ¶ 68 a-k.) Plaintiffs Jones and Pizarro also provided pay stubs that show they each worked 40 hours plus overtime, and they claim defendant miscalculated their overtime pay.  (FAC ¶¶ 69, 70.) With regard to unpaid meal breaks, Jones and Pizarro provided pay stubs that demonstrate weeks they worked in excess of 40 hours. (FAC ¶¶ 92, 93.)  The Court concluded that because these specific allegations concretely demonstrated that plaintiffs worked forty hours of work "in a given workweek as well as some uncompensated time in excess" of the forty hours, plaintiffs stated plausible FSLA overtime claims.

Plaintiffs have now moved for conditional certification of their FSLA collective action.  Defendants have objected to plaintiffs' motion, and have cross-moved to dismiss or stay plaintiffs' claims.  Defendants argue that the parties' collective bargaining agreement ("CBA") requires the arbitration of plaintiffs' claims.  Plaintiffs disagree that their claims are for governed by the CBA's arbitration provision.

## DISCUSSION

**A.    Jurisdiction**

Plaintiffs bring this action on behalf of themselves and others "similarly situated" to remedy alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and therefore this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Court exercises jurisdiction over plaintiffs' pendant state law wage claims pursuant to 28 U.S.C. § 1367.[1]

---

[1] Pursuant to their New Jersey law wage claims, plaintiffs seek Rule 23 class certification in which plaintiffs must "opt-out" of the class, rather than "opt-in" under the FLSA's conditional certification.  Actions that proceed under both "opt-in" and "opt-out" procedural mechanisms are sometimes referred to as "hybrid" actions.  Although some courts have declined to exercise jurisdiction over the state law claims in such hybrid actions, the Third Circuit recently ruled that jurisdiction over a Rule 23 "opt-out" class action based on state-law claims that parallel the FLSA is not "inherently incompatible" with the FLSA's conditional certification "opt-in" procedure.  See Knepper v. Rite Aid Corp., 675 F.3d 249, 260 (3d Cir. 2012) (also concluding that the FLSA does not preempt state law claims).  Thus, the Court exercises supplemental jurisdiction

4

B.    **Analysis**

1.    **Defendant's motion to dismiss or stay pending arbitration**

The Court addresses first defendant's motion to dismiss or stay plaintiffs' claims, and finds that the CBA's arbitration provision is not implicated by plaintiffs' claims.

The Supreme Court has instructed that an arbitration agreement in a CBA is enforceable when a dispute arises over the application or interpretation of the terms of the CBA.  Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 78 (1998) (citing AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 650 (1986)) (other citations omitted).  Where, however, a dispute "ultimately concerns not the application or interpretation of any CBA, but the meaning of a federal statute," the CBA's arbitration clause is not implicated. Wright, 475 U.S. at 78-79.

Defendant in this case argues that plaintiffs' claims regarding underpayment for overtime and working during meal breaks are actually claims that require the interpretation of

---

over plaintiffs' state wage claims because the underlying operative facts concerning the state law claims are the same as the FSLA claim.  See Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995) (district courts will exercise supplemental jurisdiction if the federal and state claims "are merely alternative theories of recovery based on the same acts,") (citing Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 479 (3d Cir. 1979)).

5

their CBA and, therefore, those claims must be arbitrated
pursuant to the CBA's arbitration provision.   Plaintiffs argue
the contrary position - that their claims are for violations of
the FSLA and not for violations of the CBA's terms that would
trigger the arbitration provision.   The Court agrees with
plaintiffs.

With regard to plaintiffs' claims regarding the 30-minute
meal break, the CBA provides that employees shall receive a
"free and uninterrupted" "30-minute unpaid meal period" during
an 8-hour day.[2]   Defendant argues that plaintiffs' claims that
they were interrupted during their unpaid 30-minute breaks
directly arise out of the contract, and as such, these claims
must be arbitrated.

If plaintiffs' claims were as defendant describes, the
Court would agree with defendant.   Plaintiffs are claiming
something different, however.   Plaintiffs are not claiming that
they want the 30-minute breaks they are entitled to under the
CBA, but rather that they were deducted 30 minutes of pay for
breaks that they were never able to take (i.e., not compensated

---

[2] Defendant points out that employees also receive two paid 15-
minute breaks during an 8-hour day, and argues that because
employees often join the 15-minute breaks with their 30-minute
break, it is unclear how plaintiffs should be compensated,
depending on what part of the break was interrupted.   This
argument goes to the substantive merits of plaintiffs' case, and
it may be advanced at the appropriate stage of the case.

6

for 30 minutes of work), which is a violation of the FSLA, 29
U.S.C. § 207 and 29 C.F.R. § 785.19.  This dispute is distinct
from any right conferred by the CBA.

As for plaintiffs' claims that defendant miscalculated
their regular rates by not accounting for differential pay they
earned during weeks in which they worked over 40 hours,
defendant argues that plaintiffs' rate of pay, of overtime or
otherwise, is dictated by the CBA, and their dispute is
therefore over the terms of the CBA, which is subject to
arbitration.  To support its position, defendant relies upon
Vadino v. A. Valey Engineers, 903 F.2d 253 (3d Cir. 1990).
There, the plaintiff acknowledged that his employer paid him one
and one-half times his normal hourly rate for all hours worked
in excess of the forty hour work week in compliance with Section
7(a) of the FLSA, see 29 U.S.C. § 207(a)(1) (requiring that
employers compensate an employee working more than forty hours a
week "at a rate not less than one and one-half times the regular
rate at which he is employed"), but the plaintiff contended that
his "regular rate" was the hourly rate he was entitled to as a
journeyman under the collective bargaining agreement, and not
the lower rate which he was actually paid.  The Third Circuit,
following Supreme Court precedent, determined that the
plaintiff's claim constituted a dispute over what rate of pay he
was entitled to under the CBA, and plaintiff was required to

7

-8a-

comply with the terms of the CBA by exhausting the internal
grievance procedure before filing suit. <u>Vadino</u>, 903 F.2d at
265-66.[3]

This case is different from <u>Vadino</u>. Plaintiffs are not
claiming that they should have been compensated at a special
rate of pay as defined by the CBA. Plaintiffs are claiming that
defendant's failure to include all of plaintiffs' differential
pay in its calculation of their regular rates resulted in
defendant paying them less than 1.5 times their regular rates
for overtime hours. Thus, by not paying plaintiffs "at a rate
not less than one and one-half times the regular rate at which
[they are] employed," 29 U.S.C. § 207(a)(1), plaintiffs claim
that defendant violated the FSLA. Moreover, as plaintiffs point
out, there is no provision in the CBA that defines "regular
rate" or "differentials," and plaintiffs' claims therefore
cannot be construed to be a breach of contractual terms that do
not exist.

---

[3] The Third Circuit elaborated, "It follows that in the event of
a dispute as to the correct wage rate under a collective
bargaining agreement and a consequential claim under the
overtime provision of the FLSA, the procedure we envision is to
decide the contract interpretation issue through the grievance
procedure to arbitration. If exhaustion can be excused, then
the employee may file a section 301 claim. . . . Concurrent
with that, the employee may bring a FLSA claim, but the FLSA
overtime claim would be dependent upon the resolution in the
section 301 claim of the contract interpretation issue." <u>Vadino</u>
<u>v. A. Valey Engineers</u>, 903 F.2d 253, 266 (3d Cir. 1990).

Accordingly, the Court finds that plaintiffs' claims are
FLSA-based violations that are distinct from ones that contend
the terms of the CBA have been breached, and they are not
subject to the CBA's arbitration provision.[4]

### 2.   Plaintiffs' motion for conditional certification

Plaintiffs are seeking to conditionally certify this matter
as a collective action under the FLSA, and to authorize Court-
supervised notice to similarly situated employees.  The court in
Pearsall-Dineen v. Freedom Mortgage Corp., 27 F. Supp. 3d 567,
569-71 (D.N.J. 2014) (quoting 29 U.S.C. § 216(b) and following
Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 242-43
(3d Cir. 2013)), recently articulated the two-step process by
which the FLSA permits an employee who believes his or her right
to overtime compensation has been violated to proceed in a
collective action, "for and on behalf of himself or themselves

---

[4] The CBA requires that employees follow internal grievance
procedures and ultimately submit to arbitration for disputes
arising out of the CBA.  It also explicitly requires employees
to follow that procedure if they feel they have been
discriminated against due to race, gender, etc.  (Docket No. 34-
2 at 118-119.)  The CBA does not contain a similar provision for
FLSA claims, which also defeats defendant's argument that
plaintiffs' FLSA claims must go to arbitration.  See Snyder v.
Dietz & Watson, Inc., 837 F. Supp. 2d 428, 440 (D.N.J. 2011)
(citing Wright, 525 U.S. at 80) ("An employee's claims that are
based on statutory rights, and are thus independent of the
rights created by a CBA, may only be subject to arbitration
where the CBA contains a 'clear and unmistakable' waiver of a
judicial forum for such rights.").

and other employees similarly situated":

> The first step analysis begins when a plaintiff moves
> for conditional certification of a collective action.  This
> step generally "occurs early in the litigation when the
> court has minimal evidence."  The conditional certification
> process, despite sometimes borrowing the language of class
> action certification from Federal Rule of Civil Procedure
> 23, is not really a certification but instead is a
> "district court's exercise of [its] discretionary power ...
> to facilitate the sending of notice to potential class
> members."  Symczyk v. Genesis Healthcare Corp., 656 F.3d
> 189, 194 (3d Cir. 2011) (citation omitted), rev'd on other
> grounds sub nom. Genesis Healthcare Corp. v. Symczyk, 133
> S. Ct. 1523 (2013).
>
> When considering the first step of conditional
> certification, courts apply a "fairly lenient standard" to
> determine whether the plaintiff has met the "modest factual
> showing" necessary for certification.  Zavala, 691 F.3d at
> 536 n.4.  Under this standard, a plaintiff "must produce
> some evidence beyond pure speculation of a factual nexus
> between the manner in which the employer's alleged policy
> affected her and the manner in which it affected other
> employees."  Id. (internal quotation marks omitted) (quoting
> Symczyk, 656 F.3d at 193). This generally requires review
> of both the pleadings and affidavits in support of or in
> opposition to the proposed collective action.  A showing
> that opt-in plaintiffs bring the same claims and seek the
> same form of relief has been considered sufficient for
> conditional certification.
>
> Following conditional certification, a FLSA collective
> action proceeds to discovery.  At or near the conclusion of
> discovery, a court (upon motion by either the plaintiff for
> final certification or by the defendant for
> decertification) proceeds to the final step for
> certification.  Symczyk, 656 F.3d at 193. "It is possible
> for a class to be certified at stage one but fail
> certification at stage two."  The final certification step
> requires a plaintiff to establish, by a preponderance of
> the evidence, that the plaintiff and opt-in plaintiffs are
> "similarly situated."  Zavala, 691 F.3d at 536.  Courts
> make this evaluation on a case-by-case basis . . . .

Pearsall-Dineen, 27 F. Supp. 3d at 569-71 (some citations and

10

quotations omitted).

Here, plaintiffs have readily met the "fairly lenient standard" of providing evidence of a factual nexus between the named and opt-in plaintiffs' underpayment of overtime pay and how this has also affected other employees who are potential opt-in plaintiffs. Plaintiffs proposed two collectives of employees – one related to the overtime pay calculation and the other related to the meal break policy. For overtime pay issues, plaintiffs' proposed collective consists of all of defendant's non-exempt employees, who, during at least one (1) workweek within the last three (3) years, worked over 40 hours and earned differential pay and/or other shift premiums. For plaintiffs' meal break policy issues, plaintiffs' proposed collective consists of all of defendant's CNAs, who, during at least one (1) workweek within the last three (3) years, worked a night shift and worked at least 40 hours.

To support their proposed collective of opt-in plaintiffs, plaintiffs rely on the pleadings and sworn affidavits, which contain assertions substantiated by the pay stubs, time records, letters written by defendant, and the collective bargaining agreement. The Court finds these submission to be more than adequate for conditional certification.

Further, the Court finds that defendant's various arguments against conditional certification go to the substantive heart of

11

the disputed issues, and not to defeat plaintiffs' evidence

showing that other employees' pay was calculated the same as the

plaintiffs. "The sole consequence of conditional certification

is the sending of court-approved written notice to employees,

who in turn become parties to a collective action only by filing

written consent with the court." Genesis Healthcare, 133 S. Ct.

at 1530. Defendant can challenge plaintiffs' and any opt-in

plaintiffs' claims that it violated the FLSA in one fell swoop

after the scope of the collective of plaintiffs is established.

See Adami v. Cardo Windows, Inc., 299 F.R.D. 68, 80 (D.N.J.

2014) ("Because a full evaluation of the merits is not

appropriate at this [conditional certification] stage, it is

sufficient that Plaintiffs share similar job duties and share a

similar business relationship with Defendants."); see also

Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)

(explaining that a collective action allows plaintiffs the

advantage of lower individual costs to vindicate rights by the

pooling of resources, and "the judicial system benefits by

efficient resolution in one proceeding of common issues of law

and fact arising from the same alleged activity").

   Having found that plaintiffs' two putative collective

actions may be conditionally certified, the next step is the

method for determining the scope of the collective actions.

Potential opt-in plaintiffs must be informed of this case and

provided the opportunity to join the litigation.  To this end,
plaintiffs have provided a proposed notice and consent form, and
they seek defendant to provide the last known names, addresses,
e-mail addresses, and phone numbers for of all individuals who
have worked for defendant as an hourly employee and received
differential pay or as a CNA who worked a night shift at any
point in the three years preceding the filing of named
plaintiffs' complaint to the present.  Plaintiffs also ask that
this Court order defendant to provide such information, in
importable and electronic form (i.e., Microsoft excel, csv, or a
similar format), and to ensure that this information can be
easily imported, the spreadsheet should contain separate columns
for first name, last name, street address, city, state, zip
code, country, phone number, and e-mail address.  Plaintiffs
also request that this Court order plaintiffs to mail the
proposed notice, by first class mail, to all such individuals.

Defendant wholesale objects to plaintiffs' proposed notice
and consent form and plaintiffs' request for employee
information, and presents over a dozen arguments for its
objections.  In reply, plaintiffs state that in order to
facilitate a timely resolution of the matter, they will
acquiesce to the majority of defendant's objections, except that
they maintain their request for (1) requiring defendants to
provide three years of employee information, not two; (2) a 90-

13

-14a-

day opt-in period, not 30 or 45 days; (3) plaintiffs' ability to send a reminder notice; (4) not having to provide the fee structure of plaintiffs' counsel; and (5) not having to modify items that defendant objects to without explanation or justification.

The Court finds that plaintiffs' notice shall be modified to incorporate defendant's objections, except for the five points plaintiffs seek to maintain. Plaintiffs shall prepare a revised notice and consent form within 14 days, and provide it to defendant and the Court for review, along with a proposed Order approving the revised notice and consent form. Defendant shall have 14 days from the time plaintiffs submit their revised notice to advance any other objections.

CONCLUSION

For the reasons expressed above, plaintiffs' FLSA claims are distinct from the terms of parties' CBA, and they may proceed with their case in this Court. Plaintiffs have met the standard for conditional certification of their two categories of collective actions. Plaintiffs' notice and consent form will be modified consistent with this Opinion. An accompanying Order will be entered.

Date:  September 22, 2015          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

14

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TYMECO JONES, IESHA BULLOCK,     Civil No. 13-7910 (NLH/AMD)
and TEAIRRA PIZARRO, on
behalf of themselves and
those similarly situated,        **ORDER**

                Plaintiffs,

        v.

SCO, SILVER CARE OPERATIONS
LLC d/b/a ALARIS HEALTH AT
CHERRY HILL,

                Defendant.

_____

     For the reasons expressed in the Court's Opinion filed

today,

     IT IS on this ___22nd___ day of __September__, 2015

     ORDERED that plaintiffs' Motion to Certify Class as a

Collective Action [34] be, and the same hereby is, GRANTED; and

it is further

     ORDERED that defendant's Cross-Motion to Dismiss for Lack

of Jurisdiction and Stay Proceedings [41] be, and the same

hereby is, DENIED; and it is further

     ORDERED that plaintiffs' notice and consent form shall be

modified to incorporate defendant's objections, except for the

five points plaintiffs seek to maintain.  Plaintiffs shall

prepare a revised notice and consent form within 14 days, and provide it to defendant and the Court for review, along with a proposed Order approving the revised notice and consent form. Defendant shall have 14 days from the time plaintiffs submit their revised notice to advance any other objections.


At Camden, New Jersey

s/ Noel L. Hillman
_____
NOEL L. HILLMAN, U.S.D.J.

2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

TYMECO JONES, IESHA BULLOCK,         Civil No. 13-7910 (NLH/AMD)
and TEAIRRA PIZARRO, on
behalf of themselves and
those similarly situated,            **OPINION**

         Plaintiffs,

     v.

SCO, SILVER CARE OPERATIONS
LLC d/b/a ALARIS HEALTH AT
CHERRY HILL,

         Defendant.

---

**APPEARANCES**

JUSTIN L. SWIDLER
MATTHEW D. MILLER
SWARTZ SWIDLER, LLC
1101 KINGS HWY N, STE. 402
CHERRY HILL, NJ 08034
     On behalf of plaintiffs

STUART WEINBERGER
GOLDBERG & WEINBERGER LLP
630 THIRD AVENUE
18TH FLOOR
NEW YORK, NY 10017
     On behalf of defendant

**HILLMAN**, District Judge

     Presently before the Court is defendant's motion to
reconsider the Court's September 22, 2015 Opinion and Order
granting plaintiffs' motion to conditionally certify their
collective action claims for defendant's alleged violations of the

federal Fair Labor Standards Act, and denying defendant's cross-motion to dismiss or stay the action pending arbitration. Defendant also requests that this Court grant their application for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) should the Court deny their motion for reconsideration.  For the reasons expressed below, defendant's motion will be granted as to the modification of one term in the conditionally certified class, but denied in all other respects.

## BACKGROUND & DISCUSSION

Plaintiffs are certified nursing assistants employed by nursing home defendant, SCO, Silver Care Operations LLC d/b/a Alaris Health at Cherry Hill.  They claim that defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and New Jersey's Wage and Hour Law and New Jersey's Wage Payment Law, when it failed to properly pay them for hours they worked in excess of 40 hours per week, and by deducting thirty minutes of paid time for meal breaks during over-night shifts, when plaintiffs rarely, if ever, took an uninterrupted break during their normal shifts.

In the Court's September 22, 2015 Opinion, the Court granted plaintiffs' motion for conditional certification of their FSLA collective action, and rejected defendant's argument that the parties' collective bargaining agreement ("CBA") required the arbitration of plaintiffs' claims.  The Court held that

2

plaintiffs' claims are FLSA-based violations that are distinct
from claims that contend the terms of the CBA have been breached.
The Court therefore determined that plaintiff's claims are not
subject to the CBA's arbitration provision.  The Court also found
that plaintiffs readily met the "fairly lenient standard" to
conditionally certify two collectives of employees: one related to
the overtime pay calculation and the other related to the meal
break policy.

In its current motion,[1] defendant argues that the Court
incorrectly found that the wage issues do not involve the
interpretation of the CBA and are not required to go to
arbitration.  Defendant asks the Court to reconsider that
decision, or certify the issue for interlocutory appeal.[2]

---

[1] A motion for reconsideration may be treated as a motion to alter
or amend judgment under Fed. R. Civ. P. 59(e), or as a motion for
relief from judgment or order under Fed. R. Civ. P. 60(b), or it
may be filed pursuant to Local Civil Rule 7.1(i).

[2] During the pendency of defendant's motion for reconsideration,
the Third Circuit issued a decision in a FLSA case, which, in a
supplemental letter to the Court, defendant contends impacts the
Court's decision of its motion for reconsideration.  (Docket No.
79.)  The Court disagrees.  In Babcock v. Butler County, 806 F.3d
153, 155 (3d Cir. 2015), the Third Circuit was tasked with
determining whether a portion of time for the Butler County Prison
corrections officers' meal periods was compensable under the FLSA.
The Third Circuit upheld the district court's dismissal of the
plaintiffs' complaint when it applied the "predominant benefits
test" to determine that the corrections officers were not
primarily engaged in work-related duties during meal break
periods.  Babcock, 806 F.3d at 156.  The Third Circuit also
observed that the parties' CBA provided for appropriate
compensation if the officers actually worked during the meal
break.  Id. at 157-58.  The facts, analysis, and procedural

3

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A judgment may be altered or amended only if the party seeking reconsideration shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Id. In reviewing defendant's motion, the Court does not find that any of these three circumstances are presented here.

Moreover, it is apparent that defendant simply disagrees with the Court's decision to not rule in its favor, and that it presents a re-argument of its positions taken in opposition to conditional certification and in support of its motion to stay pending arbitration. Re-argument and disagreement are not sufficient bases for reconsideration. See P. Schoenfeld Asset Mgmt., L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J.

_____

posture of Babcock are inapposite to the case here. This case concerns the conditional certification of a class of plaintiffs who allege that they were not compensated for work they performed during their meal breaks, as opposed to Babcock, which concerned a motion to dismiss based on insufficient allegations in a complaint regarding an unpaid fifteen minute period during which the officers did not work but had to remain on-call. Consequently, Babcock does not affect this Court's resolution of defendant's instant motion.

4

2001) (providing that a motion for reconsideration may not be used to re-litigate old matters or argue new matters that could have been raised before the original decision was reached); United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999) (mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law).

Relatedly, the issues raised in defendant's opposition to conditional class certification and its cross-motion to dismiss or stay pending arbitration do not rise to the level that warrants an interlocutory appeal. A recent FSLA collective action case that concerned a defendant's request for certification of an interlocutory appeal sets forth the interlocutory appeal standard:

> Interlocutory appeals are generally disfavored because "[p]ermitting piecemeal, prejudgment appeals ... undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." Mohawk Indus. v. Carpenter, 558 U.S. 100, 106 (1978) (quoting Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374 (1981)). However, 28 U.S.C. § 1292(b) provides an avenue for interlocutory relief if the court's order "(1) involve[s] a controlling question of law, (2) offer[s] substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately materially advance[s] the ultimate termination of the litigation." Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir.1974) (internal quotations omitted). Nevertheless, certification is "wholly within the discretion of the courts, even if the criteria are present." Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976). Accordingly, certification for interlocutory review is to be granted sparingly because only "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978).

5

Ruffin v. Avis Budget Car Rental, LLC, No. CIV.A. 11-01069-SDW, 2014 WL 4610421, at *1 (D.N.J. Sept. 15, 2014).  In Ruffin, the court conditionally certified a collective action as to the plaintiff's claim that defendant misclassified employees as exempt and failed to pay them for all hours worked or overtime compensation.  Ruffin, 2014 WL 4610421, at *1.  The court denied the defendant's request for interlocutory appeal because it found that the conditional certification issue did not arise out of a genuine doubt as to the legal standard, such as conflicting precedent, the absence of controlling law on a particular issue, or novel and complex issues of statutory interpretation.  Id. at *3 (citing Kapossy v. McGraw-Hill, Inc., 942 F. Supp. 996, 1001 (D.N.J. 1996)).

In this case, the Court does not find that the conditional certification of the collective action or the determination that plaintiffs' claims are FLSA-based claims outside the scope of the CBA to be borne out of genuine doubt as to the legal standard. Defendant's position has been advanced, and rejected depending on the circumstances, by many other employers in FSLA cases for the past 35 years.  See, e.g., Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 745-46 (1981) ("[T]he FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process.  They devolve on petitioners as individual workers, not as members of a collective organization.

6

-23a-

They are not waivable.  Because Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold that petitioners' claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures."); Bell v. Se. Pennsylvania Transp. Auth., 733 F.3d 490, 496 (3d Cir. 2013) ("Here, where the Operators rely solely on their statutory, rather than their contractual, rights to recovery, district courts have had no difficulty concluding that such plaintiffs may proceed on their FLSA claims without first seeking arbitration [pursuant to a CBA].")

Interlocutory relief also would not serve to advance the matter, as arbitration may or may not provide a quick resolution. See Barrentine, 450 U.S. at 743 (Because the "specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land," many arbitrators may not be conversant with the public law considerations underlying the FLSA. FLSA claims typically involve complex mixed questions of fact and law . . . .  These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings.  Although an arbitrator may be competent to resolve many preliminary factual questions,

7

such as whether the employee 'punched in' when he said he did, he may lack the competence to decide the ultimate legal issue whether an employee's right to a minimum wage or to overtime pay under the statute has been violated.").

Overall, defendant's "mere disagreement" with the Court's ruling does not constitute a "substantial ground for difference of opinion" within the meaning of § 1292(b). Kapossy v. McGraw-Hill, Inc., 942 F. Supp. 996, 1001 (D.N.J. 1996). Accordingly, defendant's request for interlocutory appeal must be denied.

One aspect of defendant's motion may be granted. The Court quoted from plaintiff's moving brief that "[f]or overtime pay issues, plaintiffs' proposed collective consists of all of defendant's non-exempt employees, who, during at least one (1) workweek within the last three (3) years, worked over 40 hours and earned differential pay and/or other shift premiums." (Sept. 22, 2015 Opinion, Docket No. 58 at 11, citing Pl. Br. Docket No. 34-1 at 23, "This collective action should be certified as to all of Defendant's non-exempt employees, who, during at least one (1) workweek within the last three (3) years, worked over 40 hours and earned differential pay and/or other shift premiums."). The Court then granted the conditional certification of that group of employees.

In its motion for reconsideration, defendant points out that plaintiffs did not seek to certify "all of defendant's non-exempt

8

-25a-

employees" as to the overtime pay issue, but rather only certified nurse aides who were affected by this overtime practice. This is confirmed by plaintiffs' brief in response to defendant's motion to dismiss or stay pending arbitration. (Docket No. 51 at 13 n.3, "Plaintiffs do not define the class to include 'all hourly employees' as Defendants argue, but merely all CNAs who were subject to Defendants' illegal pay policies.") Because plaintiffs' complaint and all other references to the putative class specifically concern CNAs, it is evident that the description of the overtime pay class meant to only refer to employees who were CNAs. That is the class this Court conditionally certified. Moreover, it is important to precisely define a class for many legal and practical reasons. See Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am., 453 F.3d 179, 185 (3d Cir. 2006) (requiring "a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified," because "[c]lear and complete treatment of both the class and the class claims, issues, or defenses at the class certification stage will unquestionably facilitate the timely execution of . . . the court-supervised distribution of class notice to class members"). Consequently, the Court will modify its September 22, 2015 Opinion to provide a clear and precise statement of the parameters defining the classes that are conditionally certified as follows:

9

-26a-

1.   For overtime pay issues, plaintiffs' proposed collective consists of all of defendant's CNAs, who, during at least one (1) workweek within the last three (3) years, worked over 40 hours and earned differential pay and/or other shift premiums.

2.   For plaintiffs' meal break policy issues, plaintiffs' proposed collective consists of all of defendant's CNAs, who, during at least one (1) workweek within the last three (3) years, worked a night shift and worked at least 40 hours.

The remainder of the Opinion will not be reconsidered.

### CONCLUSION

For the reasons expressed above, defendant's motion for reconsideration or interlocutory appeal will be denied, except for the clarification of the conditionally certified class concerning overtime pay.   An accompanying Order will be entered.

Date:  December 16, 2015            s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

10

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

TYMECO JONES, IESHA BULLOCK,           Civil No. 13-7910 (NLH/AMD)
and TEAIRRA PIZARRO, on
behalf of themselves and
those similarly situated,              **ORDER**

           Plaintiffs,

    v.

SCO, SILVER CARE OPERATIONS
LLC d/b/a ALARIS HEALTH AT
CHERRY HILL,

          Defendant.

---

For the reasons expressed in the Court's Opinion filed today,

IT IS on this ___16th___ day of ___December___, 2015

ORDERED that defendant's MOTION for Reconsideration [63] be, and the same hereby is, GRANTED IN PART AND DENIED IN PART:

All relief sought in defendant's motion is denied, except that the Court modifies its September 22, 2015 Opinion to define the conditionally certified collective classes as:

1. For overtime pay issues, plaintiffs' proposed collective consists of all of defendant's CNAs, who, during at least one (1) workweek within the last three (3) years, worked over 40 hours and earned differential pay and/or other shift

premiums.

2.    For plaintiffs' meal break policy issues, plaintiffs' proposed collective consists of all of defendant's CNAs, who, during at least one (1) workweek within the last three (3) years, worked a night shift and worked at least 40 hours.


                                        s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

2

-29a-